<u>REDACTED FOR PUBLIC DOCKET</u>

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

———————————————————————

AMY ROTHBAUM, individually and on
behalf of all others similarly situated,

      Plaintiff,

        v.

SAMSUNG TELECOMMUNICATIONS
AMERICA, LLC,

      Defendant.

———————————————————————

No. 11-CV-10509-MLW

**[FILED UNDER SEAL –
LEAVE GRANTED ON
JANUARY 17, 2014 (DKT. NO. 87)]**

## DEFENDANT STA'S MEMORANDUM IN SUPPORT OF ITS MOTION TO
## PRECLUDE THE EXPERT REPORT OF KEN THOMPSON

SAMSUNG TELECOMMUNICATIONS
AMERICA, LLC,

By its attorneys,

Robert M. Buchanan, Jr. (BBO# 545910)
(rbuchanan@choate.com)
Margaret E. Ives (BBO# 668906)
(mives@choate.com)
Jared M. Barnes (BBO# 679342)
(jbarnes@choate.com)
Choate, Hall & Stewart LLP
Two International Place
Boston, Massachusetts  02110
Tel: (617) 248-5000

January 21, 2014

# TABLE OF CONTENTS

**Page**

I.  THE EXPERT REPORT ADVANCED BY THE PLAINTIFF...................................... 1

    A.  Thompson Observed The Phone ............................................................................ 1

    B.  Thompson Quoted Documents Produced By STA ................................................ 3

II.  THE DAUBERT STANDARD ...................................................................................... 4

III.  ARGUMENT ................................................................................................................. 5

    A.  Thompson Did Not Apply Any Expertise When He Observed The Phone............ 5

        1.  Thompson Merely Pressed The "On" Button, Without Running Any Tests ............................................................................................... 6

        2.  Thompson Did Not Rule Out The Possibility That The Phone Shut Down For Some Reason Other Than The Defect Alleged In The Complaint .......................................................................................... 7

    B.  Thompson Merely Quoted Documents, Without Applying Any Methodology, And The Documents Refute His Contention .......................................................... 8

        1.  Thompson Did Not Apply Any Proper Scientific Methodology ................ 9

        2.  Thompson Did Not Take Into Account The Central Evidence................. 10

        3.  The Documents Refute Thompson's Contention...................................... 12

IV.  CONCLUSION............................................................................................................ 19

6019582v2

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alves v. Mazda Motor of Am., Inc.*,
   448 F. Supp. 2d 285 (D. Mass. 2006) (Wolf, J)..................................................................4, 5, 8

*Baldonado v. Wyeth*,
   Case No. 04 C 4312, 2012 U.S. Dist. LEXIS 68691 (N.D. Ill. May 17, 2012)........................9

*BASF Corp. v. Sublime Restorations, Inc.*,
   880 F. Supp. 2d 205 (D. Mass. 2012) ....................................................................................5

*Beaudette v. Louisville Ladder, Inc.*,
   462 F.3d 22 (1st Cir. 2006)....................................................................................................4

*Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*,
   509 U.S. 209 (1993).........................................................................................................13, 18

*Barber v. United Airlines, Inc.*
   17 Fed. Appx. 433 (7th Cir. 2001).........................................................................................12

*Daubert v. Merrell Dow Pharms., Inc.*,
   509 U.S. 579 (1993)....................................................................................................4, 5, 12

*General Elec. Co. v. Joiner*,
   522 U.S. 136 (1997)...............................................................................................................13

*Holden Metal & Aluminum Works, Ltd. v. Wismarq Corp.*,
   No. 00 C 0191, 2003 U.S. Dist. LEXIS 5247 (N.D. Ill. Apr. 2, 2003)...................................12

*In re Viagra Prods. Liab. Litig.*,
   658 F. Supp. 2d 950 (D. Minn. 2009) ...................................................................................10

*Irvine v. Murad Skin Research Labs., Inc.*,
   194 F. 3d 313 (1st Cir. 1999)...............................................................................9, 13, 17, 18

*Kumho Tire Co. v. Carmichael*,
   526 U.S. 137 (1999)................................................................................................................4

*McGovern v. Brigham & Women's Hosp.*,
   584 F. Supp. 2d 418 (D. Mass. 2008) (Young, J.)........................................................5, 8, 13

*Member Servs., Inc. v. Sec. Mut. Life Ins. Co.*,
   Case No. 3:06-cv-1164, 2010 U.S. Dist. LEXIS 103776 (N.D.N.Y. Sept. 30, 2010)............10

*Polidore v. McBride*,
  C.A. No. 07-433ML, 2010 U.S. Dist. LEXIS 95383 (D.R.I. Sept. 10, 2010) ........................... 9

*Robinson v. G.D. Searle & Co.*,
  286 F. Supp. 2d 1216 (N.D. Cal. 2003) ................................................................................. 19

*Samaan v. St. Joseph Hosp.*,
  670 F.3d 21 (1st Cir. 2012) ................................................................................................ 4, 5

*Sparks v. Consolidated Rail Corp.*,
  Civil Action No. 94-CV-1917, 1995 U.S. Dist. LEXIS 6234 (E.D. Pa. May 8, 1995) ............ 6

*Sutera v. Perrier Group of Am., Inc.*,
  986 F. Supp. 655 (D. Mass. 1997) (Saris, J.) ........................................................................ 8

*United States v. Benson*,
  941 F.2d 598 (7th Cir. 1991) ................................................................................................. 9

*United States v. Diaz*,
  300 F.3d 66 (1st Cir. 2002) ................................................................................................... 4

*United States v. Mooney*,
  315 F.3d 54 (1st Cir. 2002) ................................................................................................... 4

## OTHER AUTHORITIES

Fed. R. Civ. P. 26(a)(2) .............................................................................................................. 1

Federal Rule of Evidence 702 ........................................................................................... 4, 5, 19

<u>**REDACTED FOR PUBLIC DOCKET**</u>

Defendant Samsung Telecommunications America, LLC ("STA") submits this Memorandum in support of its motion to strike the Expert Report of Ken Thompson Pursuant to Fed. R. Civ. P. 26(a)(2) ("Thompson Report"), and to preclude any expert testimony by him.[1] Thompson's Report does not meet the required standard for expert testimony.

## I.    <u>THE EXPERT REPORT ADVANCED BY THE PLAINTIFF</u>

The Second Amended Complaint ("the Complaint" or "Compl.") of Plaintiff Amy Rothbaum ("Plaintiff Rothbaum") alleges that Plaintiff Rothbaum received two Captivate smartphones suffering from a particular defect. The so-called "Random Shut Down Defect" is alleged and defined in the Complaint. *See* Compl., ¶¶ 1, 22. Plaintiff Rothbaum complained to AT&T about her first phone ("the October 2010 Phone"), and then received a replacement phone ("the Replacement Phone"). STA negotiated for the right to test the Replacement Phone. Plaintiff's counsel permitted STA to conduct testing over a period of 72 hours. *See* Barnes Aff., Ex. L, § II(7). A Senior Engineer was not able to replicate the alleged problem during those 72 hours, and reported that the phone was working properly. *See* Senior Engineer's Report on the Testing of Amy Rothbaum's Smartphone, Dkt. No. 78 ("Chung Report"), ¶11. In response, the Plaintiff retained a mechanical engineer named Ken Thompson. The Thompson Report was served on October 31, 2013. STA took his deposition on November 22, 2013.

The Thompson Report consists of two parts. Neither part contains proper expert testimony.

### A.    <u>Thompson Observed The Phone.</u>

The first part of Thompson's Report is contained on Pages 2 and 7. It recounts that Thompson observed Plaintiff Rothbaum's phone. Thompson received the Replacement Phone

---

[1] The Thompson Report is attached as Exhibit A to the Affidavit of Jared Barnes, filed herewith ("Barnes Aff.").

6019582v2

**REDACTED FOR PUBLIC DOCKET**

from Plaintiff's counsel on or about October 25, 2013.  Thompson Report, Barnes Aff., Ex. A, at 7.[2]  Thompson confirmed that the IMEI number on the Replacement Phone is the same number alleged in the Complaint, and he charged the battery.  *Id*. at 2, 7.  Thompson then placed Plaintiff Rothbaum's phone on his desk and left it there for a period of six days.  Transcript of the Deposition of Ken Thompson, dated November 22, 2013 ("Thompson Dep."), excerpts attached as Ex. J to the Barnes Aff., at 77:18-87:13.  During the first three days, Thompson did not observe any problem with the phone.  On the fifth day, Thompson observed that the Replacement Phone "experience[] one random shut down event when it was in 'sleep' mode."  Thompson Report, Barnes Aff., Ex. A, at 7.

Thompson did not conduct any testing, however, to determine what had caused this event.  Thompson has no record of, and does not remember, what applications were running on the phone.  Thompson Dep., Barnes Aff., Ex. J, at 78:12-21.  Moreover, Thompson did not attempt to use the phone, and his observation did not occur during conditions of normal use.  Thompson Dep., Barnes Aff., Ex. J, at 78:2-11.

Thompson has not formed an opinion regarding the root cause of the alleged "shut down."  Thompson Dep., Barnes Aff., Ex. J, at 91:4-5.  Thus Thompson did not demonstrate that this event was caused by the particular Defect alleged in the Complaint.  He did not rule out the distinct possibility that the event was caused by some other combination of factors.  *See* Expert Report and Declaration of Joseph C. McAlexander III Dated December 2, 2013 ("McAlexander Report"), filed herewith, at ¶¶ 68, 79.

---

[2] Plaintiff Rothbaum testified that she had continued to use the Replacement Phone for eighteen months after filing this lawsuit.  She received the phone in <u>March 2011</u>.  Transcript of the Deposition of Amy Rothbaum dated November 20, 2013 ("Rothbaum Dep."), excerpts attached as Ex. K to the Barnes Aff., at 124:14-20.  She filed this lawsuit the same month.  *See* Complaint filed March 24, 2011, Dkt. No. 1.  She continued using the phone until <u>September 2012</u>.  Rothbaum Dep., Barnes Aff., Ex. K, at 167:20-169:22.  At that point she provided the Replacement Phone to her attorney and obtained a new one.  *Id*. at 175.

6019582v2

**REDACTED FOR PUBLIC DOCKET**

The first portion of Thompson's Report merely reports a factual observation, and does not advance an expert opinion.

### B. Thompson Quoted Documents Produced By STA.

The second portion of Thompson's Report is contained on Pages 3-7. It consists of quoting from documents produced by STA in this litigation.

Thompson's Report relies on eight of the documents produced by STA. Copies of these documents, along with a copy of the Thompson Report, are attached to the Barnes Affidavit, filed herewith.[3] These documents demonstrate that only a minority of the Captivate devices were reported to have any problem at all. *See* p. 12 and note 15, *infra*.[4] And, these documents demonstrate that only "a small percentage" of the Captivate phones were ever reported to have a shutdown problem. *See* p. 12 and note 16, *infra*.[5] Nonetheless, on the basis of these same documents, Thompson purports to form the opinion that <u>all</u> of the "Captivate phones sold in the United States are defective for this same reason." Thompson Report, Barnes Aff., Ex. A, at 2, 6; *see also* Thompson Dep., Barnes Aff., Ex. J, at 70:14-17. At his deposition, Thompson was asked what principle or methodology he applied to reach this conclusion. Thompson Dep., Barnes Aff., Ex. J, at 70. Thompson testified that he had "nothing to add" beyond quoting from the documents. *Id.* at 71, 74.

Thompson's opinion cannot stand, because it is refuted by his own sources.

---

[3] Four additional documents, which were produced by STA and made available to Thompson, are attached to the Second Affidavit of Timothy Rowden ("Second Rowden Aff."), filed herewith.

[4] *See, e.g.*, Barnes Aff., Ex. D (STA_ROTH 0000170); Ex. H (STA_ROTH 0000471) (both cited by Thompson); *see also* Second Rowden Aff., Ex. F (STA_ROTH 0000001).

[5] *See* Barnes Aff., Ex. B (STA_ROTH 0000004) (███████████████████████████████████████████ (emphasis added)); Ex. D (STA_ROTH 0000175) (███████████████████████████████); *see also* McAlexander Report, ¶¶ 37, 71-74; *and* s*ee* Second Rowden Aff., Ex. F (STA_ROTH 0000001).

**REDACTED FOR PUBLIC DOCKET**

## II.   THE DAUBERT STANDARD

The District Court has a critically important role as the gatekeeper of expert testimony. *Samaan v. St. Joseph Hosp.*, 670 F.3d 21, 31 (1st Cir. 2012); *see also Alves v. Mazda Motor of Am., Inc.*, 448 F. Supp. 2d 285, 299 (D. Mass. 2006) (Wolf, J).  By the express language of Federal Rule of Evidence 702, a witness who is otherwise qualified as an expert may offer opinion testimony only if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  The trial judge must ensure that the expert testimony is relevant to the task at hand, and rests on a reliable basis.  *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993); *United States v. Diaz*, 300 F.3d 66, 73 (1st Cir. 2002).

*Daubert* set forth four general guidelines for a trial judge to evaluate in considering whether expert testimony rests on an adequate foundation: "(1) whether the theory or technique can be and has been tested; (2) whether the technique has been subject to peer review and publication; (3) the technique's known or potential rate of error; and (4) the level of the theory or technique's acceptance within the relevant discipline." *United States v. Mooney*, 315 F.3d 54, 62 (1st Cir. 2002) (*citing Daubert*, 509 U.S. at 593-94).  These factors do not "constitute a definitive checklist or test," however, and the question of admissibility "must be tied to the facts of a particular case." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999) (internal quotation marks omitted); *see also Beaudette v. Louisville Ladder, Inc.*, 462 F.3d 22, 25-26 (1st Cir. 2006).

REDACTED FOR PUBLIC DOCKET

As this Court explained in *Alves*, 448 F. Supp. 2d at 298, 302, expert testimony is not admissible where the experts "did not use a methodology that is reliable in the circumstances of [the] case and did not apply their methodology reliably to the facts of [the] case." The proponent of expert testimony has "the initial burden of production and the ultimate burden of persuading the court that the proffered expert evidence satisfies Rule 702." *McGovern v. Brigham & Women's Hosp.*, 584 F. Supp. 2d 418, 422 (D. Mass. 2008) (Young, J.). A *Daubert* motion does not require an evidentiary hearing, *see e.g.*, *Alves*, 448 F. Supp. 2d at 299-302, and may appropriately be decided "at the summary judgment stage." *Samaan*, 670 F.3d at 32.

## III.   ARGUMENT

Both sections of the Thompson Report fail to meet the required standards for expert testimony. In the first section Thompson merely acts as a fact witness. In the second section Thompson advances an unsupported opinion, which does not rest on any methodology and is refuted by the evidence that he cites.

### A.   Thompson Did Not Apply Any Expertise When He Observed The Phone.

Thompson assertedly has substantial experience in testing electronic equipment.[6] Yet Thompson did not make any actual measurements of Plaintiff Rothbaum's Phone, and did not make any attempt to test the cause of the event he observed. The first portion of the Thompson Report does not apply any specialized expertise, and does not test any scientific method hypothesis. An expert who does not apply any specialized methodology does not survive *Daubert*. *See BASF Corp. v. Sublime Restorations, Inc.*, 880 F. Supp. 2d 205, 214 (D. Mass. 2012) (excluding expert testimony based on personal observation where the record did not show

---

[6] Thompson is the owner of OKEN's Red-X, a technology consulting business, "specializing in analysis of packaged Integrated Circuit devices ('ICs') for various product conformance issues." Thompson Report, Barnes Aff., Ex. A, at 9; *see also* Thompson Dep., Barnes Aff., Ex. J, at 7:13-9:25. Thompson is familiar with the testing of electronics equipment. Thompson Report, Barnes Aff., Ex. A, at 9-12. Indeed, Thompson criticized the testing performed by Senior Engineer Matthew Chung. Thompson Dep., Barnes Aff., Ex. J, at 114:17-116:20.

**REDACTED FOR PUBLIC DOCKET**

that the purported expert's testimony was "based on any theory or test capable of being repeated, subjected to peer review, standardized in the industry, or developed through any research"); *Sparks v. Consolidated Rail Corp.*, Civil Action No. 94-CV-1917, 1995 U.S. Dist. LEXIS 6234, at *9 (E.D. Pa. May 8, 1995) (expert opinions were not based on "any type of scientific knowledge," were "not the result of any testing," and were "not supported by any data").

> **1.    Thompson Merely Pressed The "On" Button, Without Running Any Tests.**

STA's expert witness has explained the shortcomings of Thompson's procedure. *See* McAlexander Report, ¶¶ 53-68.  Thompson did not attempt to determine the state of the Replacement Phone when he received it.  Thompson Dep., Barnes Aff., Ex. J, at 75:3-8.  He did not document what applications were installed and active on the phone.  He did not conduct any power testing.  He did not insert a SIM card; and therefore, the phone was not able to send or receive signals.  *Id*. at 77:25-78:11.  He did not attempt to use the camera, video, or Internet browsing functions on the phone.  *Id*. at 79:5-11; McAlexander Report, ¶¶ 53-68.

All Thompson did was to place the phone on his desk without service.  Every now and then, when the phone went into sleep mode, Thompson pushed the "on" button lightly to awaken it.  Thompson Dep., Barnes Aff., Ex. J, at 79:16-85:1.[7]  Thompson did not observe any problem during the first 72 hours.  On the morning of the fifth day, after leaving the phone on his desk turned on, unplugged, and unused for four days and four nights, the phone did not revive with a light press of the power "on" button.  *Id*. at 85:4-8.  Thompson then pressed the power "on" button for several seconds more.  That was sufficient to start up the phone.  *Id*. at 85:9-20.  And that is the full sum of the observations reported by Thompson.

---

[7] Thompson could not apparently recall, and did not document, whether he pressed the "on" button "five, six, seven, [or] ten times a day."  Thompson Dep., Barnes Aff., Ex J, at 113:17-24.

- 6 -

**REDACTED FOR PUBLIC DOCKET**

Thompson did not apply any special methodology or expertise in making his observations.  Thompson's observations are not different in character from the observations made by Plaintiff Rothbaum herself.  They are, at best, fact testimony.

> **2.      Thompson Did Not Rule Out The Possibility That The Phone Shut Down For Some Reason Other Than The Defect Alleged In The Complaint.**

Thompson did not offer an opinion regarding the cause of the one event he observed.  "I've not formed an opinion on what exactly is causing it," he testified.  *Id.* at 91:4-5.

There could be many causes of the events observed by Plaintiff Rothbaum and Thompson.  As STA's expert explains, complex electronic devices often have power problems for various reasons.  "Consumer products that are complex electronic systems are known to experience shut downs, freezes, and apparent failures to power up."  *See* McAlexander Report, ¶¶ 22-29.  Such failures can first occur when the user has installed new applications, or when revisions to the software have been made, or when the environment has changed.  *Id*. at ¶ 25.

In particular, in this case, one likely cause may be the interaction of software loaded onto the Replacement Phone by Plaintiff Rothbaum herself.

- Plaintiff Rothbaum testified that she loaded several applications on her Replacement Phone -- including Facebook, Twitter, and Words with Friends -- and she used many of the pre-loaded applications as well.  Rothbaum Dep., Barnes Aff., Ex. K, at 128:3-133:5.

- The Senior Engineer who tested the phone on behalf of STA (Matthew Chung) noted that Plaintiff's use of these applications may have contributed to her problem.  *See* Chung Report, Dkt. No. 78, ¶11.

- Thompson did not rule out this possibility.  Thompson Dep., Barnes Aff., Ex. J, at 91:4-11; *see also* McAlexander Report, ¶¶ 25, 47-48, 79.

**REDACTED FOR PUBLIC DOCKET**

- STA's expert (McAlexander) explained that this possibility remains open and is unrebutted. *Id.*[8]

An expert report is inadmissible where, as here, the expert does not present any evidence of the manner in which the defendant's product is defective. *Alves*, 448 F. Supp. 2d at 299-300 (Wolf, J.); *see also McGovern*, 584 F. Supp. 2d at 426 (Young, J.) (striking expert testimony where the witness "failed to eliminate other possible causes" for the harm suffered by the plaintiff). For this reason as well, Thompson's observations regarding the Replacement Phone do not qualify as expert testimony.

### B. Thompson Merely Quoted Documents, Without Applying Any Methodology, And The Documents Refute His Contention.

The second portion of the Thompson Report consists entirely of quoting excerpts from eight of the documents produced by STA in this litigation. *See* Thompson Report, Barnes Aff., Ex. A, at 2-7. These documents demonstrate that the great majority of the Captivate devices have never been reported to have any problem at all. *See* p. 12 and note 15, *infra*. And, the documents recount that only "a small percentage" of the devices ever had a shutdown problem. *See* p. 12 and note 16, *infra*. Yet on the basis of these same documents Thompson purports to draw the opinion that all of the Captivate phones -- 100% -- have the Defect alleged in the Complaint. *See, e.g.*, Thompson Dep., Barnes Aff., Ex. J, at 70:14-17. This is an astonishing contention. As will be shown below (*see* pp. 12-18), the documents selected by Thompson refute his contention.

Where an expert's opinion is not rationally based on the evidence, the expert's testimony is junk and should be precluded. *See, e.g., Sutera v. Perrier Group of Am., Inc.*, 986 F. Supp. 655, 660, 667 (D. Mass. 1997) (Saris, J.) (judges have a duty to insure "that the fact-finding

---

[8] McAlexander stated his opinion that the cause of the problem reported by Plaintiff Rothbaum has not yet been determined. McAlexander Report, ¶¶ 3, 79.

**REDACTED FOR PUBLIC DOCKET**

process does not become distorted by what is popularly called 'junk science'"); *see also Irvine v. Murad Skin Research Labs., Inc.*, 194 F. 3d 313, 320-321 (1st Cir. 1999) (expert witness had no basis to conclude that 100 percent of sales derived from a particular set of products, where the record evidence showed a much smaller percentage).

### 1.     Thompson Did Not Apply Any Proper Scientific Methodology.

Thompson purports to base his opinion entirely on quoting the documents produced by STA.  Thompson Report, Barnes Aff., Ex. A, at 3-7.  The Thompson Report does not suggest that he applied any specialized methodology to the information contained in these documents.  At his deposition Thompson was asked whether he applied any principle or methodology in reviewing the STA documents.  *See* Thompson Dep., Barnes Aff., Ex. J, at 70:24-25 ("Is there a principle or methodology that you're applying, and would you explain it to me, please?").  Thompson responded that he had "nothing to add" beyond quoting the documents.  *Id.* at 74:4-9.

Quoting from documents is not a proper topic of expert testimony.  Courts have repeatedly rejected testimony of this nature.  "[A]llowing an expert to provide summary testimony based on nothing more than [the expert's] review of certain discovery materials could give the jury the impression that he did something more than simply review the materials, which the jury can do itself."  *Baldonado v. Wyeth*, Case No. 04 C 4312, 2012 U.S. Dist. LEXIS 68691, at *15 (N.D. Ill. May 17, 2012) (internal quotations omitted).  "An expert's opinion is helpful only to the extent the expert draws on some special skill, knowledge, or experience to formulate that opinion; the opinion must be an *expert* opinion (that is, an opinion informed by the witness' expertise) rather than simply an opinion broached by a purported expert."  *United States v. Benson*, 941 F.2d 598, 604 (7th Cir. 1991) (emphasis in original); *see also Polidore v. McBride*, C.A. No. 07-433ML, 2010 U.S. Dist. LEXIS 95383, at *19-20 (D.R.I. Sept. 10, 2010) (expert's

- 9 -

**REDACTED FOR PUBLIC DOCKET**

stated conclusions and opinions were not the result of any particular scientific methodology and were not based on any unique knowledge or expertise, where expert merely reviewed documents); *In re Viagra Prods. Liab. Litig.*, 658 F. Supp. 2d 950, 967 (D. Minn. 2009) ("[T]he vast majority of [the expert's] report simply summarizes and states her advocacy-based interpretation of documents in the record…." (internal quotations omitted)); *Member Servs., Inc. v. Sec. Mut. Life Ins. Co.,* Case No. 3:06-cv-1164 (TJM/DEP), 2010 U.S. Dist. LEXIS 103776, *88-89 (N.D.N.Y. Sept. 30, 2010) (finding "[the expert's] Report [was] little more than a factual narrative based upon his review of select discovery documents," and excluding the proffered testimony).

For this reason alone, Thompson's opinion should be precluded.

**2.      Thompson Did Not Take Into Account The Central Evidence.**

In addition, Thompson has mischaracterized and/or ignored the central evidence that is relevant to his contention.  During his deposition, Thompson testified that he was unable to determine what fraction of Captivate phones were returned for power on/off issues, as compared to the total population of the phones.  Thompson Dep., Barnes Aff., Ex. J, at 99:6-101:15. Thompson asserted that this information was not provided in the documents.  *Id.*  In fact, however, STA provided this information in the very first document that it produced in response

- 10 -

**REDACTED FOR PUBLIC DOCKET**

to the Court's Order.[9]  *See* Second Rowden Aff., Ex. F (STA_ROTH 0000001).  Thompson

chose not to take into account this central information.[10]

The first document in STA's production is directly responsive to the question presented

by Thompson.  This document reviews the total number of Captivate devices.  *See id.* ███████

████████████████████████████████████████████████████████

████████████████████[11]████████████████████████████████████

████     The document reports how many of each subset were returned for a power-related

reason.[12] ████████████████████████████████████████████

████████████████████████████[13]████████████████████████

██████████████████████████████████████████████████████

████[14]

_____

[9] The Court ordered STA to produce documents as follows:

> Defendant shall, by October 4, 2013, produce to plaintiff all records that are relevant to the statement in the [Chung] Report, at ¶8, that: "The devices manufactured in the changed component experienced few reported shutdowns of any type. They have not experienced reports of the symptoms alleged in the Plaintiff's complaint."

Dkt. No. 68, ¶2.  In response to the Court's Order, STA produced documents numbered from STA_ROTH 0000001 -- *see* Second Rowden Aff., Ex. F -- through STA_ROTH 0000602.

[10] At first Thompson testified that he could not specifically recall whether he had reviewed this document. Thompson Dep., Barnes Aff., Ex. J, at 101:21-23.  A few minutes later, however, Thompson suggested that he chose not to include this document in his Report.  *Id*. at 110:4-6, 21-24.

[11] ████████████████ is described in the Technical Information Bulletin cited by Thompson.  *See* Barnes Aff., Ex. B (STA_ROTH 0000004); *see also* Barnes Aff., Ex. H (STA_ROTH 0000475); Chung Report, Dkt. No. 78, ¶ 8.

[12] The document refers to "CTI," which means "Customer Trouble Indicator."  *See* Second Rowden Aff., Ex. G (STA_ROTH 0000372).  This category is applied when a customer returns the phone.  The Captivate model is model number i897.  *Id.*

[13] ██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
████████████████████████ *See* McAlexander Report, ¶ 71.

[14] ██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
████████████████████████ *See* McAlexander Report, ¶¶ 71-72.

**REDACTED FOR PUBLIC DOCKET**

Thompson ignored this information.  An expert who cherry-picks his data, ignoring the central evidence, cannot assist the jury, and therefore does not meet the *Daubert* standard. *Holden Metal & Aluminum Works, Ltd. v. Wismarq Corp.*, No. 00 C 0191, 2003 U.S. Dist. LEXIS 5247, at *5-6 (N.D. Ill. Apr. 2, 2003).  For example, in *Holden Metal & Aluminum Works, Ltd.*, the Court stated:

> Another problem is that Brown has failed to familiarize himself with existing data and research from prior tests regarding paint failure and to account for conclusions in such reports opposite to his own.… Brown attempts to dismiss these inconsistencies by saying that none of the reports he reviewed in this case were critical to his opinions and that he could have made his conclusions had he not read them.  Under similar circumstances, the Seventh Circuit affirmed a district court's order barring an expert from testifying because the proffered expert did not adequately explain why he ignored certain facts and data while accepting others and failed to present any other data that supported his opinion. Essentially, the expert "cherry-picked" the facts he considered to render his opinion, and such selective use of facts failed to satisfy the scientific method and *Daubert*.

*Id.* (citing *Barber v. United Airlines, Inc.*, 17 Fed. Appx. 433, 437 (7th Cir. 2001)).  For the same reason, here, Thompson's testimony does not satisfy the standards set forth in *Daubert* and should be precluded.

### 3.        **The Documents Refute Thompson's Contention.**

On the basis of the documents produced by STA, Thompson purports to form an opinion that all of the Captivate devices have the Defect alleged in the Complaint.  *See* Thompson Report, Barnes Aff., Ex. A, at 2, 6.  The documents do not support this opinion.

In fact, the documents demonstrate that only a minority of the Samsung Captivate devices were reported to have any problems at all.[15]  More than ▮▮▮▮▮ Captivate devices were manufactured over the life of the product.  *See* Second Rowden Aff., Ex. F (STA_ROTH 0000001).  Less than ▮▮▮▮ of them were returned for any reason.  *Id.*

---

[15] *See* Barnes Aff., Ex. D (STA_ROTH 0000170) and Ex. H (STA_ROTH 0000471) (both cited by Thompson); *and see* Second Rowden Aff., Ex. F (STA_ROTH 0000001).

**REDACTED FOR PUBLIC DOCKET**

When we examine this subset further, looking for the various reasons why some consumers returned their devices, the documents demonstrate that only "a small percentage" of the Captivate devices were reported to have a power-related problem.[16] Only about ████ were returned for any power-related reason. *See* p. 11, notes 13-14, *supra*.[17] ████████████████ ████████████████████████████████████████████████████████████████████████

*See id.*; *see also* McAlexander Report, ¶ 72; *and see* Barnes Aff., Ex. C (STA_ROTH 0000133) (██████████████████); Ex. I (STA_ROTH 0000554) (████████████████ ████████████████).

The undisputed evidence flatly refutes Thompson's contention that the relevant figure is 100%. As a result, Thompson's testimony cannot assist the jury, and it should be precluded. *See, e.g., Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993) ("When an expert opinion is not supported by sufficient facts to validate it in the eyes of the law, or when indisputable record facts contradict or otherwise render the opinion unreasonable, it cannot support a jury's verdict."); *see also Irvine*, 194 F.3d at 320-321 (accounting expert had no basis for the assumption that 100% of sales derived from a given set of products); *McGovern*, 584 F. Supp. 2d at 426 (Young, J.) (excluding expert testimony because "there [was] simply too great an analytical gap between the data and the opinion proffered") (*quoting General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).

---

[16] *See* Barnes Aff., Ex. B (STA_ROTH 0000004) (████████████████████████████ ████████████████ (emphasis added)); Ex. D (STA_ROTH 0000175) (████████████████████) ; *see also* McAlexander Report, ¶¶ 37, 71-74.

[17] Further analysis showed that where a customer returned the device for a power-related reason, in many cases there was, in fact, no power-related defect. *See* Barnes Aff., Ex. I (STA_ROTH 0000554); *see also* McAlexander Report, ¶ 70. For example, ████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████

**REDACTED FOR PUBLIC DOCKET**

Thompson's opinion is contradicted by the very same documents that he relies on in his Report, as we will show next.

*The First Set Of Documents Cited By Thompson On Pages 3-5.*

On Pages 3-5 of the Thompson Report, Thompson quotes from six documents produced by STA.  Copies of the six documents are attached to the Barnes Affidavit.  Each of the six is addressed below.

(A)     First, Thompson quotes from a Technical Information Bulletin, but omits the key phrase.  The document states as follows:



Barnes Aff., Ex. B (STA_ROTH 0000004) (emphasis added).  Thompson omits the words in bold.  Thompson Report, Barnes Aff., Ex. A, at 3 (quoting STA_ROTH 0000004).  They refute his contention.

(B)     Second, Thompson quotes from STA_ROTH 0000547-598, at 551.  Thompson Report, Barnes Aff., Ex. A, at 3.  



Barnes Aff., Ex. I (STA_ROTH 0000551); *see also* Chung Report, Dkt. No. 78, ¶ 8.  The document does not support the contention that there was ever a time when 100% of the Captivate phones were defective.

(C)     Thompson quotes from an AT&T email dated March 2, 2011 as follows: "Please see the attached examples of issue reported from some of our sites concerning Samsung devices…."  Thompson Report, Barnes Aff., Ex. A, at 3 (quoting STA_ROTH 0000134).  Once

- 14 -

**REDACTED FOR PUBLIC DOCKET**

again, Thompson has omitted to quote the most salient information.  STA's response is contained

on the preceding page of the same document.  STA responded to AT&T as follows:



Barnes Aff., Ex. C (STA_ROTH 0000133) (emphasis added).

(D)      Thompson cites a document titled "i897 Galaxy-S Return Status &

Corrective Action."  Thompson Report, Barnes Aff., Ex. A, at 3-4 (citing STA_ROTH 0000169-

184).  Thompson characterizes this document (inaccurately)[18] as reporting that ▆▆ of the

Captivate phones that were returned in a given period were returned "because of the Random

Shut Down Defect."  But most of the devices were never returned for any reason.  *See* p. 12,

note 15, *supra*.  Thus, even if Thompson's characterization of this document were accurate (it is

not), the figure for ▆▆ of devices returned does not support Thompson's contention that 100%

of all Captivate devices had the alleged Defect.

(E)      Similarly, Thompson cites an Annual Quality Audit dated June 29, 2011,

for the proposition that: "during ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ between

▆▆▆▆▆▆ of all Captivate returned phones were because of the Random Shut Down Defect."

Thompson Report, Barnes Aff., Ex. A, at 4 (emphasis added); *see also* Thompson Dep., Barnes

Aff., Ex. J, at 31:6-19.  Here, too, even if Thompson's characterization of the document were

accurate (it is not), on its face this proposition does not support Thompson's opinion that all

---

[18] The chart on STA_ROTH 0000174 suggests that ▆▆ of Captivate returns between ▆▆▆▆▆▆
▆▆ were characterized by the user as having a power on/off issue. This does not mean that ▆▆ of these returned
devices had the particular Defect that is alleged by the Plaintiff.  The very next page notes that there were several
potential causes for customer reports of power on/off issues.  Barnes Aff., Ex. D (STA_ROTH 0000175).  For
example, ▆▆ of these issues were caused by user rooting.  *Id*. at STA_ROTH 0000170-174.  User rooting means
unauthorized action by the user to disable or replace portions of the operating system.  *See* McAlexander Report, ¶
25.

**REDACTED FOR PUBLIC DOCKET**

Captivate devices are defective.  Moreover, Thompson ignores the information on the very next

page, which demonstrates that ████████████████████████████████████████

████████████████████   Barnes Aff., Ex. G (STA_ROTH 0000421).

(F)    Thompson also cites STA_ROTH 0000472 to make the same point.

Thompson Report, Barnes Aff., Ex. A, at 5.  Once again, the document simply does not support

Thompson's purported opinion that all Captivate phones have the alleged Defect.  Indeed, Page

474 of this same document demonstrates the opposite.  Barnes Aff., Ex. H (STA_ROTH

0000474).  ████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████  In short, this document affirmatively

demonstrates that only a small percentage of Captivate phones ever had a power off issue, and it

further demonstrates that ██████████████████████████████████████

████████████████   See also McAlexander Report, ¶ 70.

*The Second Set Of Documents Cited By Thompson On Pages 6-7.*

On Pages 6 and 7 of his Report, Thompson cites three STA documents in support of his

contention that "Samsung failed to remedy the Random Shut Down Defect in Plaintiff's

Captivate Phone and the other Captivate phones sold in the United States."  Thompson Report,

Barnes Aff., Ex. A, at 6-7.  As before, the documents flatly refute his contention.  Each of these

documents is attached to the Barnes Affidavit, and each is addressed below.

(A)    Thompson quotes from STA_ROTH 0000304, a May 26, 2011 email.  *See*

Thompson Report, Barnes Aff., Ex. A, at 6-7.  ████████████████████████████

████████████████████████████████████████   Barnes Aff., Ex. F

- 16 -

**REDACTED FOR PUBLIC DOCKET**

(STA_ROTH 0000304). ███████████████████████████████████████

███████████████████████████████████████        *See* p. 12, note 15, *supra.*

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████     Thompson Report, Barnes Aff., Ex. A, at 6-7.[19]  This email only

shows that ████ units ████████████ had a power problem.  This email does not show that

100% of all Captivate devices have a defect.  Thompson's testimony to that effect cannot be

sustained.  *See Irvine*, 194 F. 3d at 320-321, *supra.*

      (B)     On Page 7 Thompson quotes from a March 30, 2011 email as follows:

"Team, please see the attached examples for Captivate power off issues on IMEI outside of the

covered date range."  Thompson Report, Barnes Aff., Ex. A, at 7 (citing STA_ROTH 0000186).

This document reflects that there may have been confusion about the IMEI numbers of the units

████████████████████████████.  Confusion about a complex numbering system

is not surprising.  There is nothing in the cited emails, however, to suggest that all Samsung

Captivate devices have the alleged Defect.  *See* Barnes Aff., Ex. E (STA_ROTH 0000185-187).

      (C)     Finally, on Page 7 Thompson cites STA_ROTH 0000473 and points to the

subset of Captivate devices that were manufactured in the month of ████████.  This document

reports that customers returned ████ of the devices that were manufactured in that particular

month.  (The figure ████ covers all returns for any reason, and is not limited to returns for a

power-related reason.)  Thompson Report, Barnes Aff., Ex. A, at 7.  As Thompson's Report

would have it, ████ Captivate phones were manufactured in that month.  Thompson does not

know whether this figure is correct, however.  ███████████████████████

---

[19] The email chain went on to note that the root cause had not been identified.  Barnes Aff., Ex. F, at STA_ROTH 0000303.

**REDACTED FOR PUBLIC DOCKET**



████. Thompson has no independent knowledge of ████████████. Thompson

Dep., Barnes Aff., Ex. J, at 124:16-126:11.  Therefore, Thompson has no basis for asserting that

customers returned a high percentage of the units that were manufactured in that month.  *Cf.*

Thompson Report, Barnes Aff., Ex. A, at 7.

In any event, Thompson's characterization does not extend to devices that were

manufactured in other months.  The Captivate was manufactured from ████████ through

████████.  *See* Second Rowden Aff., Ex. F (STA_ROTH 0000001).  All told, more than

████████ units were produced.  *See id.* (STA_ROTH 0000001), ████████████

████.  Less than ████ units were ever returned for any power-related reason.  *See id.*

(STA_ROTH 0000001), ████████████████.  There is no support for

Thompson's contention that <u>all</u> of the Captivate units have the Defect alleged in the Complaint.

\*      \*      \*

As the purported basis for his opinion, Thompson relies on eight of the documents that

were produced by STA.  These very same documents refute Thompson's stated opinion.  The

case law clearly teaches what should be done in this situation.  Where an expert's opinion is

refuted by his own sources, the expert should not be permitted to testify.  *See, e.g., Brooke*

*Group*, 509 U.S. at 242 ("When an expert opinion is not supported by sufficient facts to validate

it in the eyes of the law, or when indisputable record facts contradict or otherwise render the

opinion unreasonable, it cannot support a jury's verdict."); *Irvine*, 194 F.3d at 320-321 (granting

defendant a new trial where plaintiff's expert based his testimony on the unsupported assumption

- 18 -

**REDACTED FOR PUBLIC DOCKET**

that 100% of sales for a particular year derived from a given set of products); *see also Robinson*

*v. G.D. Searle & Co.*, 286 F. Supp. 2d 1216, 1221-22 (N.D. Cal. 2003) (excluding expert

opinion, pursuant to FRE Rule 702, where it was based on a faulty factual premise that was

contradicted by documents produced during discovery).

**IV.   CONCLUSION**

        Thompson has not properly applied any expertise in this case.  (A) In the first portion of

his Report, Thompson merely observed Plaintiff Rothbaum's Phone, and did not apply any

expertise.  At most, this is fact testimony.  (B) The second portion of Thompson's Report merely

quotes from documents produced by STA.  Thompson purports to reach an opinion on the basis

of these documents.  In fact, however, his opinion is refuted by the same documents.  This

testimony has no rational basis.  It should be precluded.

                                        Respectfully submitted,

                                        SAMSUNG TELECOMMUNICATIONS
                                        AMERICA, LLC,

                                        By its attorneys,

                                        /s/ *Robert M. Buchanan, Jr.*
                                        Robert M. Buchanan, Jr. (BBO# 545910)
                                        (rbuchanan@choate.com)
                                        Margaret E. Ives (BBO# 668906)
                                        (mives@choate.com)
                                        Jared M. Barnes (BBO# 679342)
                                        (jbarnes@choate.com)
                                        Choate, Hall & Stewart LLP
                                        Two International Place
                                        Boston, Massachusetts  02110
                                        Tel: (617) 248-5000

January 21, 2014

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically in redacted form on January 28 to the registered participants as identified on the Notice of Electronic Filing (NEF) and that paper copies will be sent to all counsel on January 21, 2014.

/s/ *Robert M. Buchanan, Jr.*
Robert M. Buchanan, Jr. (BBO# 545910)

- 20 -