UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMY ROTHBAUM, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG TELECOMMUNICATIONS AMERICA, LLC,<br><br>Defendant. | NO. 11-CV-10509-MLW |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO PRECLUDE THE EXPERT REPORT OF KEN THOMPSON**

# **TABLE OF CONTENTS**

INTRODUCTION..........................................................................................................1

STATEMENT OF FACTS............................................................................................1

    The Samsung Galaxy S Smartphones
and the Random Shut Down Defect........................................................................1

    Procedural History of the Events Leading to the
Filing of Defendant's Motion for Summary Judgment............................................2

    Plaintiff's Expert Confirms That the Plaintiff's
Samsung Phone and ■ Samsung i897 Phones
Are Plagued By The Random Shut Down Defect ..................................................3

ARGUMENT..................................................................................................................6

    I.    Legal Standard..................................................................................................6

    II.   Plaintiff's Expert Utilized the Same Expert
Methodology Used By Samsung's Engineer
When He Tested Plaintiff's Samsung Phone....................................................7

    III.  Plaintiff's Expert Was Not Required
To Rule Out Every Conceivable Alternative
When He Tested Plaintiff's Samsung Phone....................................................8

    IV.  Plaintiff's Expert Employed His Thirty One Years
of Consumer Electronics Engineering Expertise and
Carefully Evaluated The Central Evidence Relevant
To The Expert Opinions He Has Offered In This Litigation.........................11

CONCLUSION............................................................................................................13

## TABLE OF AUTHORITIES

**Federal Cases**

*Altieri v. State Farm*, 2011 U.S. Dist. LEXIS 53231
    (E.D. Pa., May 17, 2011)................................................................................7

*Correa v. Crusader Engines, et al.*,
    298 F.3d 13 (1st Cir. 2002).............................................................................6

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993).............................................................................*passim*

*Federal Insurance Company v. Pentair Residential Filtration, LLC*,
    2013 U.S. Dist. LEXIS 165646 (D. Mass. Nov. 21, 2013)............................9

*Hickerson v. Pride Mobility Prods. Corp.*,
    470 F.3d 1252 (8th Cir. 2006).........................................................................7

*Jahn v. Equine Services, PSC*,
    233 F.3d 382, 390 (6th Cir. 2000)................................................................10

*Ruiz-Troche v. Pepsi Cola of Puerto Rico Bottling, Co.*,
    161 F.3d 77 (1st Cir. 1998).............................................................................9

*Shuck v. C-Line Farms, Inc.*,
    498 F.3d 868 (8th Cir. 2007)...........................................................................8

*Zeolla v. Ford Motor Company*,
    2013 U.S. Dist. LEXIS (D. Mass. Jan. 24, 2013)........................................13

**Other Statutes**

Federal Rule of Evidence 702.................................................................................1

## INTRODUCTION

Plaintiff Amy Rothbaum ("Plaintiff" or "Rothbaum") respectfully submits this memorandum in opposition to Defendant Samsung Telecommunications America, LLC's ("Samsung" or "Defendant") Motion to Preclude the Expert Report of Ken Thompson. As demonstrated herein, and contrary to the arguments advanced by Samsung, both the Expert Report ("Thompson Report") and testimony proffered by Plaintiff's expert, Mr. Ken Thompson, amply satisfy the requirements of Federal Rule of Evidence 702, and, therefore should not be precluded.

## STATEMENT OF FACTS

### The Samsung Galaxy S Smartphones and the Random Shut Down Defect

Plaintiff's Second Amended Class Action Complaint ("SAC") alleges that Defendant Samsung knowingly sold its Samsung Galaxy S Model Smartphones[1] with a design defect that causes these Smartphones to randomly shut down (the "Random Shut Down Defect"). *See* Exhibit A to the accompanying Declaration of Paul O. Paradis in Support of Plaintiff's Opposition to Defendant's Motion to Preclude the Expert Report of Ken Thompson at ¶ 1 ("Paradis Decl.").

On October 16, 2010, Plaintiff purchased a Samsung Captivate™ Smartphone from an AT&T store in Holyoke, Massachusetts. Paradis Decl. Ex. B at 45-46. Soon after plaintiff purchased her Samsung Captivate™ Smartphone, Plaintiff's Samsung Phone began to manifest the Random Shut Down Defect. Paradis Decl. Ex. B at 88-89. As Plaintiff testified during her deposition in this litigation on November 20, 2013, Plaintiff's Samsung Phone has continued to "randomly shut down constantly." Paradis Decl. Ex. B at 28, 100, 142, 169.

---

[1] The Samsung Galaxy S Smartphones include seven specific models: (i) the Captivate™ sold by AT&T, (ii) the Fascinate™ sold by Verizon, (iii) the Vibrant™ sold by T-Mobile, (iv) the Epic 4G™ sold by Sprint, (v) the Continuum™ sold by Verizon, (vi) the Mesmerize™ sold by U.S. Cellular, and (vii) the Showcase™ sold by Cellular South (collectively, the "Samsung Phones").

1

**Procedural History of the Events Leading to the**
**Filing of Defendant's Motion for Summary Judgment**

On September 16, 2013, the Court conducted a Status Conference in this litigation. Paradis Decl. Ex. C. During this Status Conference, counsel for Samsung informed the Court that a Samsung Engineer had tested Plaintiff's Samsung Phone for three days in order to determine whether the Plaintiff's Samsung Phone was plagued by the Random Shut Down Defect. Paradis Decl. Ex. C at 11. Samsung's counsel further informed the Court that, during the three day period during which Samsung tested the Plaintiff's Samsung Phone, the phone "did not shut down" and it is therefore Samsung's position that Plaintiff's Samsung Phone is not plagued by the Random Shut Down Defect. *Id.*

Because Samsung's Engineer did not observe a random shutdown event involving Plaintiff's Samsung Phone during the three-day period during which he tested Plaintiff's phone, Samsung's counsel then argued that Samsung should be permitted to bring a motion for summary judgment in order to test Plaintiff's assertion that her Samsung Phone is, in fact, plagued by the Random Shut Down Defect. *Id.* at 10, 12, 17. In doing so, Samsung's counsel stated, "I think the only way to force the issue to find out what evidence there ever will be in support of the defect for this phone is for me to bring the motion and then they will be required to respond . . . I would like to test the assertion that this phone is defective and see what they say." *Id.* at 17-18.

The September 16, 2013 Status Conference was concluded with the Court informing the parties that Samsung would be permitted to file a motion for summary judgment in order to test Plaintiff's allegations that her Samsung Phone is defective because it is plagued by the Random Shut Down Defect. *Id.* at 38. On September 18, 2013, the Court issued an Order which, among

other things, established a schedule for the: (i) parties to conduct limited discovery for purposes of enabling Defendant to file, and Plaintiff to oppose, Defendant's Motion for Summary Judgment on the issue of whether Plaintiff's Samsung Phone is defective because it is plagued by the Random Shut Down Defect; (ii) Plaintiff to make any expert disclosures required under the Federal Rules of Civil Procedure; (ii) Defendant to file its Motion for Summary Judgment; and (iii) Plaintiff to file her Opposition to Defendant's Motion for Summary Judgment. Paradis Decl. Ex. D.

In accordance with the Court's September 18, 2013 Order: (i) Samsung produced the limited universe of documents that the Court ordered Samsung to produce during the September 16, 2013 Status Conference on October 4, 2013; (ii) Plaintiff served the Expert Report of Ken Thompson on October 31, 2013. Paradis Decl. Ex. E; (ii) Plaintiff appeared for her deposition on November 20, 2013; and (iii) Mr. Thompson appeared for his deposition on November 22, 2013. On January 21, 2014, Defendant filed and served Defendant's Motion for Summary Judgment and Motion to Preclude the Expert Report of Ken Thompson.

**Plaintiff's Expert Confirms That the Plaintiff's Samsung Phone and ▇▇Samsung i897 Phones Are Plagued By The Random Shut Down Defect**

In anticipation of Samsung filing its "motion for summary judgment on the very simple targeted ground that this [Plaintiff's] particular phone doesn't have a defect," Plaintiff retained Mr. Ken Thompson as Plaintiff's Expert "▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇n ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇" Paradis Decl. Ex. C at 10; Ex. F at 6.

In his Expert Report, and during his testimony, Mr. Thompson testified concerning his qualifications to serve as plaintiff's expert in this litigation and testified that his principal area of expertise is in the design, manufacture, testing and analysis of battery-operated consumer electronic products. Paradis Decl. Ex. F at 6-7. Mr. Thompson also testified concerning the

3

work that he undertook in connection with this litigation in order to form his opinions. Among other things, Mr. Thompson testified that he personally:

- inspected Plaintiff's Samsung Phone and inspected the internal components to confirm that he was in possession of, and testing, Plaintiff's actual Samsung Phone. Paradis Decl. Ex. F at 74-75;

- made scientific observations of Plaintiff's Samsung Phone upon inspecting it and did not note anything out of the ordinary. Paradis Decl. Ex. F at 76;

- fully charged Plaintiff's Samsung Phone for several hours prior to powering up the phone in order to conduct the test and then tested the functionality of the phone through depressing the keypad and also conducted an inspection to identify the various applications on the phone. Paradis Decl. Ex. F at 77-78;

- commenced his testing protocol after having performed these procedures in order to determine whether the Plaintiff's Samsung Phone is plagued by the Random Shut Down Defect. Paradis Decl. Ex. F at 79-87;

- conducted this test protocol for a total of six days and observed that the Random Shut Down Defect had ▓▓▓▓▓▓▓ Plaintiff's Samsung Phone ▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓ Paradis Decl. Ex. F at 84-85;

- reviewed and analyzed documents and data produced by Samsung and AT&T and applied his 31 years of consumer electronics engineering expertise in investigating the existence of the Random Shut Down Defect, both in Plaintiff's Samsung Phone and in ▓▓ of the other Samsung Phones sold. Paradis Decl. Ex. F at 29-38;

- researched and consulted general data sheets on ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ in connection with his research on the impact of ▓▓▓▓▓▓▓▓▓▓▓▓▓ on ▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ as the Samsung Phones in connection with his investigation of the Random Shut Down Defect in this litigation. Paradis Decl. Ex. F at 29-43; and

- analyzed data and documents produced by Samsung and AT&T concerning the ▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ for the Samsung Galaxy i897 phone over the lifespan of the product in order to assess the widespread nature and severity of the Random Shut Down Defect. Paradis Decl. Ex. F at 30-31, 47-48.

After having performed his work, Mr. Thompson formed his opinions and testified unequivocally, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████

████ Paradis Decl. Ex. E at 2. (Emphasis added).

During his deposition, Samsung's counsel examined Mr. Thompson as follows:

Q: [D]o you have an opinion as to what is the cause of the random shutdown defect as alleged in the complaint?

A: ██

Q: And what is your opinion?

A: ██████████████████████████████████
████████████████████

Q: And what is the basis for your opinion?

A: ██████████████████████████████████
██████████████████████████████████.

Q: Is the basis for your opinion stated in your report?

A: ██.

Paradis Decl. Ex. F at 29. (Emphasis added).

Samsung's counsel then further examined Mr. Thompson, which elicited the following series of questions and answers:

Q: Do you have an opinion -- is it your opinion that all of the i897 phones are defective?"

A: ████

Q: 100 percent?

A: ████

Q: And <u>what is the basis for your opinion that</u> ▮ <u>of them are defective</u>?

A: ▮

Q: <u>How high a rate of failure</u>?

A: ▮

Q: So the random shutdown defect, to your recollection, was the highest failure category of those phones that were returned?

A: ▮

Paradis Decl. Ex. F at 30-31. (Emphasis added).

## ARGUMENT

### I. Legal Standard

Federal Rule of Evidence 702 imposes an important gatekeeper function on judges by requiring them to ensure three requirements are met for admitting expert testimony: (1) the expert is qualified to testify by knowledge, skill, experience, training, or education; (2) the testimony concerned scientific, technical, or other specialized knowledge; and (3) the testimony is such that it will assist the trier of fact in understanding determining a fact in issue. See Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589, (1993); *Correa v. Crusader Engines, et al.*, 298 F.3d 13 (1st Cir. 2002). Because the expert testimony proffered by Plaintiff's expert, Ken Thompson, satisfies all three of these requirements, Mr. Thompson's expert report and testimony must be admitted.

## II. Plaintiff's Expert Utilized the Same Expert Methodology Used By Samsung's Engineer When He Tested Plaintiff's Samsung Phone

Unhappy with the highly damaging expert opinions offered by Mr. Thompson in this litigation, and unable to assail his qualifications to serve as Plaintiff's expert, Samsung now resorts to arguing that Mr. Thompson's opinions should be precluded because Mr. Thompson "did not apply a special methodology or expertise in making his observations." Deft's Mem. at 7. As demonstrated by the record in this case, Samsung's argument is completely unfounded and borders on frivolity.

When asked to describe the specific work that he had performed in testing Plaintiff's Samsung Phone, Mr. Thompson testified that he had personally tested and observed Plaintiff's Samsung phone for ███████████████████████████████████████

████████████████████████████[2] Paradis Decl. Ex. F at 74-87. The test methodology employed by Plaintiff's Expert, Mr. Thompson, is ████████████████

████████████ Mr. Matthew Chung, the Samsung Senior Engineer who also tested Plaintiff's Samsung Phone to determine whether the Plaintiff's Samsung Phone is plagued by the Random Shut Down Defect.

According to Mr. Chung's "Report On The Testing Of Amy Rothbaum's Smartphone," Senior Engineer Chung attempted to determine whether the Plaintiff's Samsung Phone is plagued by the Random Shut Down Defect by powering on the phone, leaving the "phone idle in

---

[2] To the extent Samsung attempts to argue that Mr. Thompson was required to apply some specialized methodology beyond the testing and observation he testified about at pp. 74-87 of his deposition transcript, Samsung is incorrect as a matter of law because numerous courts have recognized that an expert's opinion is admissible even where the methodology involved no testing, but rather, only involved the application of specialized knowledge to observations of a scene or particular set of circumstances. *Hickerson v. Pride Mobility Prods. Corp.*, 470 F.3d 1252, 1257 (8th Cir. 2006)("holding that a fire causation expert's opinion was admissible where the methodology involved no testing but, [rather, only involved] the application of specialized knowledge to observations of a fire scene"). *See also Altieri v. State Farm*, 2011 U.S. Dist. LEXIS 53231 (E.D. Pa., May 17, 2011)(holding that, where a defense expert "made first-hand observations of the collapse and applied his knowledge and experience of structural design

standby mode for certain periods of time throughout the day... [and checking] to see whether the alleged shutdown symptom manifest[ed] itself. Paradis Decl. Ex. G at ¶ 4. Like Mr. Thompson, Senior Engineer Chung "left the phone idle in standby mode [overnight and]... returned in the morning to resume testing... [and] checked to see whether the alleged shutdown symptom manifest[ed] itself." *Id.* at ¶ 5. According to Senior Engineer Chung's Report, this process of leaving the Plaintiff's Samsung Phone "idle in standby mode for certain periods of time throughout the day" and then later checking "to see whether the alleged shutdown symptom manifest[ed] itself" was repeated over the course of the three-day test conducted by Senior Engineer Chung. *Id.* at ¶¶ 5, 6, 9.

Accordingly, the testimony provided by Plaintiff's Expert, Ken Thompson, at pages ▓▓ ▓▓ of his deposition transcript, demonstrates that the test procedure utilized by Samsung's Senior Engineer is ▓▓▓▓▓▓▓▓▓▓ to the test procedure employed by Mr. Thompson in connection with his attempt to determine whether Plaintiff's Samsung Phone is ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓ Because of this, Samsung's argument that Mr. Thompson failed to employ any "special methodology or expertise in making his observations," and that his Expert Report and opinions should therefore be precluded, rings hollow. *See Shuck v. C-Line Farms, Inc.*, 498 F.3d 868 at 874 (8th Cir. 2007)("when a litigant really believes that a certain methodology is acceptable as shown by his or her own expert's reliance on that methodology, it is disingenuous to challenge an opponent use of that methodology").

### III. Plaintiff's Expert Was Not Required To Rule Out Every Conceivable Alternative When He Tested Plaintiff's Samsung Phone

Samsung next argues that Mr. Thompson's expert report is inadmissible simply because Mr. Thompson "did not rule out the possibility that the [Plaintiff's Samsung] Phone shutdown

---

and engineering to reach conclusions regarding the cause of the collapse, the mere fact that his conclusions do not

for some reason other than the defect alleged in the complaint." Deft. Mem at 7. Samsung's argument is incorrect as a matter of law because the holding of *Daubert* does not require that an expert rule out every conceivable alternative explanation of an event as a predicate for the admissibility of his or her testimony. *Federal Insurance Company v. Pentair Residential Filtration, LLC*, 2013 U.S. Dist. LEXIS 165646 (D. Mass. Nov. 21, 2013).

Plaintiff questions Defendant's good faith in advancing this argument in light of the well-established law of this Circuit following the issuance of the First Circuit Court of Appeals' opinion in *Ruiz-Troche v. Pepsi Cola of Puerto Rico Bottling, Co.*, 161 F.3d 77, 85 (1st Cir. 1998) in which that Court held:

> *Daubert* does not require that a party who proffers expert testimony carry the burden of proving to the judge that the expert's assessment of the situation is correct... In short, *Daubert* neither requires nor empowers trial courts to determine which of the several competing theories has the best provenance. It demands only that the proponent of the evidence show that the expert's conclusion has been arrived at in a scientifically sound and methodologically reliable fashion.[3]

Defendant also argues that Mr. Thompson's Expert Report is inadmissible because he has not presented any evidence of the manner in which the Defendant's product is defective. Deft's Mem. at 8. Once again, Defendant is incorrect as a matter of fact because Mr. Thompson has provided extensive evidence and testimony concerning both the nature of the random shutdown defect and his opinion concerning the cause of this defect.

In particular, Mr. Thompson's Expert Report states in relevant part: "

---

match Plaintiff's expert is not a basis for preclusion").

██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
████████████████████████████████████████" Paradis Decl. Ex. E at 2.
(Emphasis added).

In addition, during his deposition, Mr. Thompson presented additional evidence of the manner in which the Defendant's product is defective when he testified in relevant part:

> Q: **[D]o you have an opinion as to what is the cause of the random shutdown defect as alleged in the complaint?**
>
> A: ██
>
> Q: **And what is your opinion?**
>
> A: ████████████████████████████████
>
> Q: **And what is the basis for your opinion?**
>
> A: ████████████████████████████████
>
> Q: Is the basis for your opinion stated in your report?
>
> A: ██

Paradis Decl. Ex. F at 29. (Emphasis added).

Finally, in advancing this unfounded argument, Defendant also ignores the damning evidence found in its own documents -- which were relied upon and cited by Mr. Thompson in his Expert Report. For example, at p. 4, Mr. Thompson's Expert Report states in relevant part, the following "████████████████████████████████████████

---

[3] *See also Jahn v. Equine Services, PSC*, 233 F.3d 382, 390 (6th Cir. 2000) (holding that "an expert witnesses' conclusion regarding all admissible evidence need not eliminate all other possible causes of injury").

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬" and incorporates the following graph, which was produced in discovery by Defendant:



Paradis Decl. Ex. E at 4. (Emphasis added).

IV.  **Plaintiff's Expert Employed His Thirty One Years of Consumer Electronics Engineering Expertise and Carefully Evaluated the Central Evidence Relevant <u>To The Expert Opinions He Has Offered In This Litigation</u>**

For its final argument, Defendant argues that Mr. Thompson's Expert Report should be precluded because Mr. Thompson's opinions are based "entirely on [Mr. Thompson] quoting the documents produced by [Samsung]." Deft's Mem at 9. Defendant's final argument is a gross misstatement of the content of both Mr. Thompson's Expert Report and his sworn deposition testimony because Defendant would have this Court believe that Mr. Thompson's expert opinion is based on nothing more than his having read and quoted from damning information found in Defendant's own documents that were produced pursuant to this Court's order.

In reality, however, nothing could be further from the truth -- as demonstrated by Mr. Thompson's own testimony. During his deposition, Mr. Thompson testified in relevant part "▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬," and "▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬." Paradis Decl. Ex. F at 29. (Emphasis added).

Contrary to Defendant's argument that Mr. Thompson has "mischaracterized and/or ignored the central evidence that is relevant to his contention," Mr. Thompson's Expert Report makes clear that he carefully analyzed and thoroughly considered all of the documentary evidence produced by Samsung. In this vein, Mr. Thompson admits that he "▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬." Paradis Decl. Ex. E at 3. (Emphasis added). Mr. Thompson's Report then discusses and quotes from several documents that he reviewed and analyzed which "▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬." Id.

Simply stated, Mr. Thompson has provided sufficient evidentiary foundation for his opinions and set forth reasonable explanations for data that appears inconsistent with those opinions. He has not, as Defendant incorrectly argues, entirely ignored central, uncontroverted facts. Rather he has opined that both the Plaintiff's Samsung Phone, as well as ▬▬ of the other i897 Samsung Phones designed and sold by Defendant are all ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

Plaintiff in the SAC.   Accordingly, Mr. Thompson's Expert Report is entirely proper and should therefore not be stricken. *See Zeolla v. Ford Motor Company*, 2013 U.S. Dist. LEXIS (D. Mass Jan. 24, 2013) at *26-27.

## CONCLUSION

On the basis of the foregoing, Plaintiff respectfully requests that Defendant's Motion to Preclude the Expert Report of Ken Thompson be denied in its entirety.

Dated: March 19, 2014

Respectfully submitted,

AMY ROTHBAUM, individually and on behalf of all others similarly situated,

By her attorneys,

/s/ Edward F. Haber
Edward F. Haber (BBO No. 215620)
ehaber@shulaw.com
Adam M. Stewart (BBO No. 661090)
astewart@shulaw.com
SHAPIRO HABER & URMY LLP
53 State Street
Boston, MA 02109
Tele: (617) 439-3939
Fax: (617) 439-0134

Paul O. Paradis, admitted *pro hac vice*
pparadis@hhplawny.com
Gina M. Tufaro, admitted *pro hac vice*
gtufaro@hhplawny.com
HORWITZ HORWITZ & PARADIS
570 Seventh Avenue, 20th Floor
New York, NY 10018
Tele: (212) 986-4500
Fax: (212) 986-4501

## CERTIFICATE OF SERVICE

      I hereby certify that this document, filed through the ECF system, was sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on March 19, 2014.

                                                /s/ Edward F. Haber
                                                Edward F. Haber