UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| AMY ROTHBAUM, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | NO. 11-CV-10509-MLW **[FILED UNDER SEAL]** |
| SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, | ) ) ) | |
| Defendant. | ) ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

INTRODUCTION............................................................................... 1

STATEMENT OF FACTS.................................................................... 1

    The Samsung Phones.................................................................... 1

    Defendant's Documents Demonstrate
    That The Samsung Phones Are Defective.................................................. 1

    Samsung Failed To Remedy The Random
    Shut Down Defect In Plaintiff's Samsung Phones......................................... 3

    Plaintiff's Experience Confirms
    That Her Samsung Phone Is Defective..................................................... 4

    Plaintiff's Expert's Conclusions.......................................................... 5

ARGUMENT................................................................................... 6

  I.      Summary Judgment Standard.......................................................... 6

  II.     Plaintiff Has Put Forth Substantial Evidence That Plaintiff's
        Samsung Phones Were Defective Upon Receipt and That Defendant
        Caused The Defect In Plaintiff's Samsung Phone...................................... 6

        A.    Plaintiff Has Put Forth Substantial Evidence
              That Plaintiff's Samsung Phones
              Were Defective Upon Receipt............................................... 7

             1.  Plaintiff's Testimony Establishes
                That Her Samsung Phones Were Defective............................... 7

             2.  Plaintiff's Expert's Testing Establishes
                That Plaintiff's Samsung Phones Were Defective........................ 9

             3.  Defendant's Documents Establish
                That Plaintiff's Samsung Phones Were Defective........................ 9

        B.    Plaintiff Has Put Forth Substantial Evidence
               That Defendant Caused Plaintiff's Samsung
              Phones To Be Defective.................................................... 12

  III.    Genuine Issues of Material Fact Exist As To Whether
        Defendant Can Provide Plaintiff With A Remedy, At All.............................. 13

i

IV.   Defendant's Remaining Legal Arguments Are Unavailing.............................. 15

    A.   Plaintiff Can Sustain A Claim For Breach
Of Implied Warranty Of Merchantability
(Count I) Because Defendant's Purported
Remedy Fails of Its Essential Purpose....................................... 15

    B.   Plaintiff Can Sustain A Claim Under Ch. 93A (Count II).................. 16

      1.   Plaintiff Can Sustain A Claim Under Ch. 93A (Count II)
Because Defendant's Breach of the Implied Warranty
Of Merchantability Constitutes a Violation of Ch. 93A.....................16

      2.   Plaintiff Can Sustain A Claim Under Ch. 93A (Count II)
Because Defendant Was Under A Duty To Disclose
The Existence Of The Random Shut Down Defect..........................17

    C.   Granting Summary Judgment On Plaintiff's
Nationwide Claim For Breach of Warranty
Under Texas Law (Count III) Is Premature
Because The Parties Have Not Yet Engaged
In Choice of Law Discovery....................................................19

CONCLUSION................................................................................. 20

## TABLE OF AUTHORITIES

### Federal Cases

*BASF Corp. v. Sublime Restors., Inc.*,
   880 F. Supp. 2d 205 (D. Mass. 2012)...........................................................10

*Boston Helicopter Charter, Inc. v. Agusta Aviation Corp.*,
   767 F. Supp. 363 (D. Mass. 1991)..............................................................15

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)................................................................................6

*Diaz v. City of Fitchburg*,
   176 F.3d 560 (1st Cir. 1999).....................................................................6

*Federal Insurance Company v. Pentair Residential Filtration, LLC*,
   2013 U.S. Dist. LEXIS 165646 (D. Mass. Nov. 21, 2013).....................................13

*Goldman v. First Nat'l Bank of Boston*,
   985 F.2d 1113 (1st Cir. 1993)....................................................................6

*Garside v. Osco Drug, Inc.*,
   895 F.2d 46 (1st Cir. 1990).......................................................................6

*Jacob v. Am. Med. Intl., Inc.*,
   No. 83-0426-F, 1985 U.S. Dist. LEXIS 21522 (D. Mass. Mar. 21, 1985)..................16

*Kos Kam Inc. v. Triangle Pac. Corp.*,
   No. 86-0101-S, 1987 U.S. Dist. LEXIS 16725 (D. Mass. Jan. 21, 1987)...................15

*L.B. Corp. v. Schweitzer-Manduit Int'l, Inc.*,
   121 F. Supp. 2d 147 (D. Mass. 2000)...........................................................19

*Logan Equip. Corp. v. Simon Aerials, Inc.*,
   736 F. Supp. 1188 (D. Mass. 1990)............................................................. 19

*Lounge 22, LLC v. Scales, et al.*,
   680 F. Supp. 2d 343 (D. Mass. 2010)...........................................................18

*Mesnick v. General Elec. Co.*,
   950 F.2d 816 (1st Cir. 1991).................................................................6, 13

*Stuto v. Corning Glass Works*,
   CIV. A. 88-1150-WF, 1990 WL 105615 (D. Mass. July 23, 1990)........................ 12

*Transurface Carriers, Inc. v. Ford Motor Co.*,
  1983 U.S. Dist. LEXIS 11485 (D. Mass. Nov. 21, 1983)....................................12

*Venezia v. Miller Brewing Co.*,
  626 F.2d 188 (1st Cir. 1980)...............................................................10, 11

## **State Cases**

*Feeney v. Dell*,
  454 Mass. 192 (2009).......................................................................19

*Grant Thornton LLP v. Suntrust Bank*,
  133 S.W.3d 342, 350-61 (Tex. App. Dallas 2004)............................................19

*Hannon v. Original Gunite Aquatech Pools, Inc.*,
  385 Mass. 813 (1982)................................................................... 11, 12

*Levings v. Forbes & Wallace, Inc.*,
  8 Mass. App. Ct. 498 (1979)................................................................17

*Massachusetts Employers Exch. Ins. v. Propac-Mass, Inc.*,
  420 Mass. 39 (1995)................................................................ 17, 18, 19

*Underwood v. Risman*,
  414 Mass. 96 (1993)........................................................................19

*Zompetti v. Fleetwood Travel Trailers of Md., Inc.*,
  22 Mass. L. Rep. 515 (2007)................................................................15

## INTRODUCTION

Plaintiff Amy Rothbaum ("Plaintiff") respectfully submits this memorandum of law in opposition to Defendant Samsung Telecommunications America, LLC's ("Defendant") motion for summary judgment.

## STATEMENT OF FACTS

### The Samsung Phones

Defendant manufactures certain smartphones, including the family of smartphones sold under the "Samsung Galaxy S" name. The Samsung Galaxy S smartphones models include the Captivate™ sold by AT&T (collectively, the "Samsung Phones"). Second Amended Complaint ("SAC") at ¶¶13-15. Defendant launched the Captivate phone on June 8, 2010. On October 16, 2010, Plaintiff purchased her Captivate phone. Declaration of Gina M. Tufaro (the "Tufaro Decl.") Ex. A at 69-71. Defendant's documents indicate that Defendant sold approximately ███████████████████████████ during the period July 18, 2010 through June 2011. ████████████████████

### Defendant's Documents Demonstrate That The Samsung Phones Are Defective

Within weeks of the launch date of the Captivate phones, Defendant began to witness an ███████████████ for the Captivate phones. By October 1, 2010, almost an entire month before Plaintiff purchased her Samsung Phone, the return rate for the Captivate phone ████████████ ███████████████ from previous months' return rates. ███████████████████████ ███████. Internally, Defendant attributed these ████████████ to a condition whereby ███████ ██████████████████████████████████████ . . ." Tufaro Decl. Ex. D STA_ROTH 0000004. This condition has become known as the "Random Shut Down Defect."

1

Defendant's documents demonstrate that, as of October 1, 2010, prior to Plaintiff's purchase, the Random Shut Down Defect was responsible for ▓▓▓▓▓ of the overall return rate for the Captivate phone. Tufaro Decl. Ex. E at STA_ROTH 0000552. As the months passed, the return rate for the Captivate phone continued dramatically to increase, with the vast majority of returns being attributable to the Random Shut Down Defect. For the period September 2010 through July 2011, ▓▓▓▓▓▓▓▓ of all Captivate phone returns were due to the Random Shut Down Defect. Tufaro Decl. Ex. F. The following chart produced by Defendant clearly depicts the impact of the Random Shut Down Defect on the returns for the Captivate phone, as compared to any other reason customers had for returning their Captivate phones:



Furthermore, and contrary to Samsung's argument that "only a 'small percentage' of the devices had a propensity to shut down," Plaintiff's expert, Mr. Ken Thompson ("Thompson") testified that, based on his analysis of ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓ **Phones are defective**." Tufaro Decl. Ex. S at 30-31, 66, 69-72. (Emphasis added).

2

**Samsung Failed To Remedy The Random**
**Shut Down Defect In Plaintiff's Samsung Phones**

By November 6, 2010, just 19 days after Plaintiff purchased her Samsung Phone,

Defendant believed that it had isolated the root cause of the Random Shut Down Defect and

began implementing a purported fix. In particular, Defendant claimed ████████████████

████████████████████████████████████████████████████████████

████████████████████████ Tufaro Decl Ex. E at STA_ROTH 0000551.

Defendant's solution was to ██████████████████████ ████████████████

Tufaro Decl Ex. G at STA_ROTH 0000182.

Despite the ████████ however, Defendant continued to receive Captivate returns

due to the Random Shut Down Defect. *See, e.g.*, Tufaro Decl Ex. H.  A May 26, 2011 email

entitled "████████████████████" clearly admits that, despite Samsung's efforts to

remedy the Random Shut Down Defect, Samsung failed to do so.  This email states in relevant

part: "████████████████████████████████████████████████"

█████████████████████████████████████. ████████████

████████████████████████████████████████████████████

████████████████" Tufaro Decl. Ex. I.  (Emphasis added).  Additionally, a

March 30, 2011 internal Samsung email states in relevant part: ████████████████████

█████████████████████████████████████████████████████

evidence that the ████████ had failed to remedy the Random Shut Down Defect.  Tufaro

Decl. Ex. J.  Samsung's blatant failure to cure the Random Shut Down Defect is further

demonstrated by the fact ████████████████████████████████████████

████ (████████████████████████) ████████████████

████████. Tufaro Decl. Ex. B.

**Plaintiff's Experience Confirms That Her Samsung Phone Is Defective**

*Within one and a half months* from the date that Plaintiff purchased her Samsung Phone, Plaintiff began to experience the Random Shut Down Defect. Tufaro Decl. Ex. A at 88-90. Plaintiff testified, "Well, I hadn't heard anything from [the phone] in a little while...And then I realized that was unusual, so I looked at it and thought it was asleep, but the poking and prodding you usually need to do to wake the phone up wasn't working. That's when I realized it was off." Tufaro Decl. Ex. A at 89:10-16. Plaintiff further testified that her Samsung Phone randomly shut down on multiple occasions. Plaintiff testified that, in mid December, her Samsung Phone randomly shut down, just one or two week after the initial incident. Tufaro Decl. Ex. A at 102:10-11. Plaintiff testified that the second time her Samsung Phone randomly shut down was much like the first. Plaintiff stated, "it was similar in that I realized I hadn't gotten any calls or any noises from my phone" and that "I looked at my phone...saw the black screen...hit the back arrow to wake it up from sleep. It wasn't waking up from sleep, so I did the, well, let me try a different button, let me wait, and then I was annoyed because this had happened once before, and it turned out that the phone had just randomly shut down..." Tufaro Decl. Ex. A 102:17-19, 106:6-19. *See also* Tufaro Decl. Ex. A at 107:14-16 (testifying to a third event).

As a result of experiencing the Random Shut Down Defect on multiple occasions, Plaintiff visited an AT&T service center for a potential remedy. Tufaro Decl. Ex. A at 108:2-3, 110-112. While at the AT&T service center, the representative expressly confirmed to Plaintiff that the Samsung Phones were defective and that Plaintiff was not the only customer experiencing that Random Shut Down Defect. Tufaro Decl. Ex. A at 151:9-13. The AT&T representative attempted to perform a "factory reset" of the settings in Plaintiff's Samsung Phone, but such acts did not remedy Plaintiff's situation, as Plaintiff continued to experience the

Random Shut Down Defect. Tufaro Decl. Ex. A at 111:20-24, 112:7.

In January of 2011, frustrated that her Samsung Phone repeatedly continued to shut down randomly, Plaintiff telephoned AT&T to, again, explain the situation. Tufaro Decl. Ex. A at 112-113:3 ("and I called and explained that this was ridiculous that this was happening.") The representative sent a replacement battery to Plaintiff, which she used but did not resolve the Random Shut Down Defect. Tufaro Decl. Ex. A at 113:1-3, 117:3-5, 120:1. In March of 2011, after continually experiencing the Random Shut Down Defect, Plaintiff went to the AT&T store at which she had initially purchased her Samsung Phone. Tufaro Decl. Ex. A at 122:21-23. The AT&T representative informed Plaintiff that AT&T would be sending a new Samsung Phone to Plaintiff (the "Replacement Samsung Phone"). Tufaro Decl. Ex. A at 123:6-7. Plaintiff received her Replacement Samsung Phone and, either that same day, or one day later, Plaintiff's Replacement Samsung Phone exhibited the Random Shut Down Defect. Tufaro Decl. Ex. A at 134:19-21. This experience with Plaintiff's Replacement Samsung Phone was not an isolated incident, rather, after receiving her Replacement Samsung Phone, Plaintiff's Replacement Samsung Phone "continued to randomly shut down." Tufaro Decl. Ex. K at ¶ 16; Tufaro Decl. Ex. A at 202:18-22.

**Plaintiff's Expert's Conclusions**

In anticipation of Defendant's motion for summary judgment, Plaintiff retained Thompson as Plaintiff's Expert to determine if there was, indeed, a random shut down defect in Plaintiff's Replacement Samsung Phone. After reviewing Defendant's document production and extensively testing Plaintiff's Replacement Samsung Phone, Thompson concluded, in relevant part, that: (█████████████████████████████████████████████████ which manifested during Thompson's testing; (ii)██████████████████████████████████

5



R█████████████████████████o; and (iii) ████████████████████████

███████████████████████████████████████████████Tufaro

Decl. Ex. L at 6, 7.

Based on this record, Defendant now inexplicably moves for summary judgment.

## ARGUMENT

### I.  Summary Judgment Standard

A court may allow a motion for summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c);  *Goldman v. First Nat'l Bank of Boston*, 985 F.2d 1113, 1116 (1st Cir. 1993). Initially, the moving party must aver that the non-moving party lacks evidence to support its claim.[1]

### II.  Plaintiff Has Put Forth Substantial Evidence That Plaintiff's Samsung Phones Were Defective Upon Receipt and That Defendant Caused The Defect In Plaintiff's Samsung Phones

Defendant raises two arguments with respect to Plaintiff's breach of implied warranty claim. First, Defendant argues that Plaintiff has failed to provide this Court with evidence that Plaintiff's Samsung Phone and the Replacement Samsung Phone were defective.  Second, Defendant claims that Plaintiff has failed to demonstrate that Defendant's actions – as oppose to

---

[1]     *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986); *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48 (1st Cir. 1990). In order to avoid summary judgment, the nonmoving party must establish a genuine issue of material fact as to every element of its case. *See Mesnick v. General Elec. Co.*, 950 F.2d 816, 825 (1st Cir. 1991). In determining whether a genuine issue exists for trial the court must view facts, and inferences from facts, in the light most favorable to the plaintiff. *Diaz v. City of Fitchburg*, 176 F.3d 560, 561 (1st Cir. 1999). *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986); *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48 (1st Cir. 1990). In order to avoid summary judgment, the nonmoving party must establish a genuine issue of material fact as to every element of its case. *See Mesnick v. General Elec. Co.*, 950 F.2d 816, 825 (1st Cir. 1991). In determining whether a genuine issue exists for trial the court must view facts, and inferences from facts, in the light most favorable to the plaintiff. *Diaz v. City of Fitchburg*, 176 F.3d 560, 561 (1st Cir. 1999).

6

Plaintiff's actions – caused her Samsung Phones to be defective. Defendant's arguments fail because Plaintiff has put forth substantial evidence that: (i) Plaintiff's Samsung Phones were defective and (ii) Defendant's actions, and not Plaintiff's, caused Plaintiff's Samsung Phones to be defective. At the very least, the evidence adduced by Plaintiff raises genuine issues of material fact regarding the existence of the Random Shut Down Defect in Plaintiff's Samsung Phones and causation. Accordingly, Defendant's motion for summary judgment must be denied.

### A. Plaintiff Has Put Forth Substantial Evidence That Plaintiff's Samsung Phones Were Defective Upon Receipt

The record is replete with evidence demonstrating that Plaintiff's Samsung Phones were defective upon receipt. In particular, (i) Plaintiff's own testimony; (ii) testimony of Plaintiff's expert and (iii) Defendant's documents demonstrate that Plaintiff's Samsung Phones were defective upon receipt. At the very least, the evidence adduced by Plaintiff raises genuine issues of material fact as to whether Plaintiff's Samsung Phones were defective.

### 1. Plaintiff's Testimony Establishes That Her Samsung Phone Was Defective

Plaintiff testified that *within one and a half months* from the date that she purchase her Samsung Phone, Plaintiff began to experience the Random Shut Down Defect. Tufaro Decl. Ex. A at 88-90. Plaintiff testified, "Well, I hadn't heard anything from [the phone] in a little while...And then I realized that was unusual, so I looked at it and thought it was asleep, but the poking and prodding you usually need to do to wake the phone up wasn't working. That's when I realized it was off." Tufaro Decl. Ex. A at 89:10-16.

Plaintiff further testified that her Samsung Phone randomly shut down on multiple occasions. Plaintiff testified that in mid December her Samsung Phone randomly shut down, just one or two weeks after the initial incident. Tufaro Decl. Ex. A at 102:10-11. *See also* Tufaro

Decl. Ex. A at 107:14-16 (testifying to a third event).

As a result of experiencing the Random Shut Down Defect on multiple occasions, Plaintiff visited an AT&T service center for a potential remedy. Tufaro Decl. Ex. A at 108:2-3, 110-112. While at the AT&T service center, the representative expressly confirmed to Plaintiff that Plaintiff was not the only customer experiencing that Random Shut Down Defect, but that many others had experienced it as well. Tufaro Decl. Ex. A at 151:9-13. The AT&T representative attempted to perform a "factory reset" of the settings in Plaintiff's Samsung Phone, but such acts did not remedy Plaintiff's situation, as Plaintiff continued to experience the Random Shut Down Defect. Tufaro Decl. Ex. A at 111:20-24, 112:7.

In January of 2011, frustrated that her Samsung Phone repeatedly continued to shut down randomly, Plaintiff telephoned AT&T to again, explain the situation. Tufaro Decl. Ex. A at 112-113:3. The representative sent a replacement battery to Plaintiff, which she used but which did not remedy the situation, as Plaintiff continued to experience the Random Shut Down Defect. Tufaro Decl. Ex. A at 113:1-3, 117:3-5, 120:1. In March of 2011, after continually experiencing the Random Shut Down Defect, Plaintiff went to an AT&T where a AT&T representative informed Plaintiff that AT&T would be sending a new Samsung Phone to Plaintiff to remedy the Random Shut Down Defect. Tufaro Decl. Ex. A at 123:6-7. Plaintiff received her Replacement Samsung Phone and immediately began to experience the Random Shut Down Defect. Tufaro Decl. Ex. A at 134:19-21. Thereafter, Plaintiff's Replacement Samsung Phone "continued to randomly shut down." Tufaro Decl. Ex. L at ¶ 16; Tufaro Decl. Ex. A at 202:18-22.

Plaintiff's testimony clearly establishes that Plaintiff's Samsung Phones were defective upon receipt. At a minimum, Plaintiff's testimony establishes genuine issues of material fact as to this issue.

### 2.  Plaintiff's Expert's Testing Establishes
### That Plaintiff's Samsung Phone Was Defective

On October 25, 2013, following a visual inspection of Plaintiff's Replacement Samsung Phone, Thompson tested Plaintiff's Replacement Samsung Phone.  In light of the fact that Defendant failed to remedy the Random Shut Down Defect, Plaintiff's Replacement Samsung Phone ███████████████████████████████████████. Tufaro Decl. Ex. L at 7.  Thompson's tests establish that Plaintiff's Replacement Samsung Phone was defective upon receipt.  At a minimum, Thompson's tests establish genuine issues of material fact as to whether Plaintiff's Replacement Samsung Phone was defective upon receipt.

### 3.  Defendant's Documents Establish
### That Plaintiff's Samsung Phones Were Defective

As explained above, and as demonstrated by Defendant's internal documents, within months of the Samsung Phones' launch date, Defendant began to witness an████████████████ for the Captivate phone.  By October 1, 2010, almost an entire month before Plaintiff purchased her Samsung Phone, ████████████████████████████████████████████ ███████████████████ Tufaro Decl. Ex. C at STA_ROTH 0000151. Internally, Defendant attributed these ████████████████████████████. Tufaro Decl. Ex. D.  As the months passed, the return rate for the Captivate phone continued ████████████ ███████████████████████████████████████████████████████ For the period September 2010 through July 2011, b███████████ of all Captivate phone returns were because of the Random Shut Down Defect. Tufaro Decl. Ex. F.

On November 6, 2010, Defendant implemented ███████████ This fix did not remedy the Random Shut Down Defect. According to Defendant, ██████████████ ██████████████████████████████████████████████████████

Decl. Ex I.

Despite the lengthy record established by Plaintiff, Plaintiff's expert and Defendant's documents, all of which demonstrate that Plaintiff's Samsung Phone and Replacement Samsung Phone were defective, and, therefore, that Defendant breached the implied warranty of merchantability, Defendant erroneously argues that Plaintiff cannot sustain this claim because Plaintiff continued to use her Replacement Samsung Phone for 18 months after filing this action, thereby purportedly demonstrating that Plaintiff's Replacement Samsung Phone was fit for its ordinary purpose. Defendant's argument, however, is contradicted by Plaintiff's own testimony and case law setting forth the standard for breach of the implied warranty of merchantability under Massachusetts law.

In Massachusetts, the implied warranty of merchantability states products must be "fit for the ordinary purposes for which such goods are used." Mass. G.L. c. 106,-§ 2-314. The First Circuit has held that "under Massachusetts law the question of fitness for ordinary purposes is largely one centering around reasonable consumer expectations." *Venezia v. Miller Brewing Co.*, 626 F.2d 188, 190 (1st Cir. 1980). This Court has similarly held: "The level of review is not that of the subjective expectations of the particular user, but the reasonable expectations of an ordinary user or purchaser." *BASF Corp. v. Sublime Restors., Inc.*, 880 F. Supp. 2d 205, 217 (D. Mass. 2012).

Here, Plaintiff's Replacement Samsung Phone did not meet the reasonable expectations of an ordinary consumer required. While Plaintiff did retain and use her phone until September 2012, during that period of time she testified that her phone continued to experience the Random Shut Down Defect. Tufaro Decl. Ex. L at ¶ 16; Tufaro Decl. Ex. A at 202:18-22. Repeated and random shut down of a cell phone is well beyond the reasonable expectations of a consumer.

Furthermore, Defendant's own documentation, demonstrate that Plaintiff was not alone in her experience, and that, therefore, the reasonable expectations of ordinary users of the Samsung Phones, in general, were not being satisfied. *See. e.g.,* Tufaro Decl. Ex. M ████████████████

████████████████████████████████

████████████); Tufaro Decl. Ex. N(████████████████████████████

████████████████████████████, Tufaro Decl. Ex.

O(██████████████████████████████████

██████████████████████████████████

Tufaro Decl. Ex. P(████████████████████████████████

████████████████████████████████); Tufaro

Decl. Ex. I (████████████████████████████████

████████████," and further that the████████████████████

contributing factor."); Tufaro Decl. Ex. Q ████████████████████

(████████████████████████████████████

(████████████████. Both the avalanche of consumer complaints and the ████████ that Defendant faced regarding this Samsung Phone as a result of the Random Shut Down Defect demonstrate that the manifestation of the Random Shut Down Defect is not within the reasonable expectation of an ordinary user.

Defendant's argument that because Plaintiff used her Replacement Samsung Phone for 18 months after filing this action, Plaintiff cannot establish a breach of implied warranty for merchantability claim fails to even address this "reasonable expectation" rule of law. *Venezia,* 626 F.2d at 190. Further, the cases upon which Defendant relies do not offer any support. Defendant relies primarily on *Hannon v. Original Gunite Aquatech Pools. Inc.,* 385 Mass. 813,

822 (1982). In *Hannon*, the plaintiff contracted with the defendant to excavate and install a gunite swimming pool in plaintiff's backyard. Plaintiff became dissatisfied with the excavation process, timing and the quality of the pool and sued for breach of implied and express warranty and for violations of Ch. 93A. Although Defendant, here, cites *Hannon*, for support for its argument that Plaintiff cannot establish a breach of implied warranty of merchantability claim, the *Hannon* court *never* reached any conclusion regarding the plaintiff's breach of implied warranty of merchantability claim because the defendant offered to make repairs to the swimming pool, which the court found defendant was capable of doing. *Id.* According, *Hannon* provides no support for Defendant's argument that Plaintiff cannot establish a breach of implied warranty of merchantability claim. [2]

## B. Plaintiff Has Put Forth Substantial Evidence That Defendant Caused Plaintiff's Samsung Phones To Be Defective

Defendant contends that Plaintiff has failed to establish that Defendant's conduct, as opposed to Plaintiff's, is the *sole* cause of the defect in Plaintiff's Samsung Phones. This argument, however, confuses the nature of this summary judgment motion. It is Defendant that must establish that it's acts were *not* the cause of the defect in Plaintiff's Samsung Phones, which Defendant has not done, because it cannot, given the documentary evidence establishing otherwise. Plaintiff, as the opponent of summary judgment, carries the burden of establishing a

---

[2]    *Stuto v. Corning Glass Works*, CIV. A. 88-1150-WF, 1990 WL 105615, at *3 (D. Mass. July 23, 1990) similarly fails to provide Defendant with any support. In *Stuto*, the plaintiff was carrying a plate manufactured by defendant when she slipped and fell. The plate shattered and severed a tendon in the plaintiff's hand. The plaintiff brought suit for breach of the implied warranty of merchantability because the plate had not been "unbreakable". In granting the defendant's motion for summary judgment on the breach of implied warranty claim, the court found that a lack of "crashworthiness" of a plate cannot support a warranty claim. *Id.* The facts in *Stuto* are so disparate from those presented here that no credible argument can be made for even citing to *Stuto*. Defendant further relies on *Transurface Carriers, Inc. v. Ford Motor Co.*, where the plaintiff brought suit for breach of the implied warranty of merchantability for defects in an automobile, despite the fact that the plaintiff drove the automobile over 200,000 miles, the duration of the entire express warranty. 1983 U.S. Dist. LEXIS 11485, *4-5. Central to the court's finding that the plaintiff failed to establish a breach of the implied warranty of merchantability was the fact that the truck had performed its "operating essentials." Here, however, because the Random Shut Down Defect caused Plaintiff's phone to randomly turn off, Plaintiff was unable, on multiple occasions, to make use of her Samsung Phones' "operating essentials."

genuine issue of material fact as to the root cause of the defect in Plaintiff's Samsung Phone. *See Mesnick*, 950 F.2d 816, 825. Plaintiff has met this burden.[3]

Plaintiff's own testimony raises genuine issues of material fact with respect to the root cause of the defect in Plaintiff's Samsung Phone. Plaintiff's testimony establishes that Plaintiff did not: (i) voluntarily turn her Samsung Phone off during the episodes of Random Shut Down (Tufaro Decl. Ex. A at 96:4-7); (ii) drain the battery (Tufaro Decl. Ex. A at 96:16-22, 104:1-13); alter any of the Samsung Phones' configurations so as to disable standby mode (Tufaro Decl. Ex. A at 121:5, 122:7-8); or drop the Samsung Phones (Tufaro Decl. Ex. A at 134:4-6). Furthermore, Plaintiff's testimony establishes that before Plaintiff even had an opportunity to install any applications on her Replacement Samsung Phone, the Replacement Samsung Phone randomly shut down. *See* Tufaro Decl. Ex. A at 134(testifying that Plaintiff first experienced the Random Shut Down Defect on her Replacement Samsung Phone either the same day or within one day of having received the Replacement Samsung Phone). Such testimony, especially when viewed in the light most favorable to Plaintiff, at the very least, raises genuine issues of material fact as to the cause of the defect in Plaintiff's Samsung Phone.[4]

### III.   Genuine Issues of Material Fact Exist As To Whether Defendant Can Provide Plaintiff With A Remedy, At All

Defendant cursorily argues that summary judgment is appropriate because Defendant has offered to Plaintiff a "functioning replacement" Samsung Phone. Def't's Mem. at 12-15. The record establishes, however, that Plaintiff properly refused Samsung's replacement Samsung

---

[3]     Furthermore, Plaintiff's expert was not required to rule out every potential cause for the Random Shut Down Defect. *Federal Insurance Company v. Pentair Residential Filtration, LLC*, 2013 U.S. Dist. LEXIS 165646 (D. Mass. Nov. 21, 2013).

[4]     In a related argument, Defendant contends that summary judgment is appropriate because Plaintiff's phone does not suffer from the same defect described in the SAC. Def't's Mem. at 11-12. Defendant points to the fact that, in the SAC, Plaintiff alleged that, in order to re-activate a Samsung Phone that has experienced the Random Shut Down Defect, a consumer must remove and re-insert the battery and power the Samsung Phone back on. SAC at ¶ 22. This fact is only a minor fact, not a material fact on which a motion for summary judgment can be premised.

Phone because Samsung was not able to provide a "functioning" replacement Samsung Phone to Plaintiff, as evidenced by: (i) the fact that Plaintiff did receive a Replacement Samsung Phone from Defendant, which was defective, a fact confirmed by Thompson, and (ii) documents produced by Defendant explaining that the ██████████████ by Defendant to remedy the Random Shut Down Defect were not effective.[5]

Plaintiff's experience with her *Replacement* Samsung Phone establishes that Defendant was not, and is not, able to provide Plaintiff with a "functioning" replacement. *See* Tufaro Decl. Ex. A at 134:19-21 (testifying that Plaintiff had received her Replacement Samsung Phone and, either that same day, or one day later, Plaintiff's Replacement Samsung Phone exhibited the Random Shut Down Defect).

Thompson's expert report and testimony further bolsters the conclusion that ████ ████████████████████. Tufaro Decl. Ex. L at 7 (concluding that Plaintiff's Replacement Phone was ████████ because ████████████████ during tests conducted by ████████).

Finally, Defendant's own documents, at a minimum, call into question whether Defendant could provide a "functioning" replacement Samsung Phone to Plaintiff because the measures that Defendant took to ██████ the Random Shut Down Defect failed to remedy the Random Shut Down Defect. *See, e.g.,* Tufaro Decl. Ex. I (an email dated May 26, 2011 explains that ████████████████████████████████" and further that the ████████ ████████████████████████")

---

[5]     At the May 31, 2012 hearing, the Court held that Plaintiff was not required to accept a defective replacement Samsung Phone because such a remedy fails of its essential purpose and Massachusetts law does not require a buyer to give an opportunity to cure in order to state a claim that a remedy fails of its essential purpose. Tufaro Decl. Ex. R at 25 ("In this case, Rothbaum has alleged sufficient facts to support the plausible inference that Samsung's proffered remedy, a replacement of the Captivate phone, fails of its essential purpose because it will suffer from the same random shutdown defect as her original phone.").

Accordingly, at a minimum, genuine issue of material fact exists as to whether Defendant is capable of providing a "functioning replacement"

## IV. Defendant's Remaining Legal Arguments Are Unavailing

### A. Plaintiff Can Sustain A Claim For Breach of Implied Warranty Of Merchantability (Count I) Because Defendant's Purported Remedy Fails of Its Essential Purpose

Defendant, again, argues that summary judgment is warranted because Defendant is willing and able to replace Plaintiff's defective Replacement Samsung Phone. Deft's Mem. 15. As set forth above, Defendant tried to provide Plaintiff with a "functioning" replacement, which, like its predecessor, suffered from the Random Shut Down Defect. *See* Tufaro Decl. Ex. A at 134:19-21. This fact was confirmed by ████████████████████████████████████████ ████████████████████████████████. Finally, Defendant's internal documents demonstrate that ████████████████ did not ████████████████ ████ Tufaro Decl. Ex. I ████ ████ Accordingly, summary judgment on Count I is not appropriate, as Defendant's purported remedy fails of its essential purpose. *See, e.g., Zompetti v. Fleetwood Travel Trailers of Md., Inc.*, 22 Mass. L. Rep. 515 (2007) (denying summary judgment as to breach of warranty where, despite repairs, an issue of fact was raised as to whether the repairs failed the warranty's essential purpose) (citations omitted).

Furthermore, cases cited by Defendant support *Plaintiff's* position summary judgment is inappropriate where the offer of a remedy that fails of its essential purpose is made. *E.g., Boston Helicopter Charter, Inc. v. Agusta Aviation Corp.*, 767 F. Supp. 363, 373 (D. Mass. 1991) ("[A] repair-or-replace remedy fails of its essential purpose where the 'seller is either unwilling or unable to conform the goods to the contract.'"); *Kos Kam Inc. v. Triangle Pac. Corp.*, No. 86-

0101-S, 1987 U.S. Dist. LEXIS 16725, at *6 (D. Mass. Jan. 21, 1987) ("[T]he provision is unenforceable under section 2-719(2) only if the circumstances are such that applying it would cause the buyer to receive less than what the contract calls for: for example, as when a defect is incurable or where it is not possible to determine what part must be repaired or replaced to remedy a defect.").[6]

## B. Plaintiff Can Sustain A Claim Under Ch. 93A (Count II)

### 1. Plaintiff Can Sustain A Claim Under Ch. 93A (Count II) Because Defendant's Breach of the Implied Warranty Of Merchantability Constitutes a Violation of Ch. 93A

"Generally, a breach of warranty constitutes a violation of G.L.c. 93A, § 2." *Zompetti,* 22 Mass. L. Rep. 515. Because Plaintiff can sustain a claim for breach of the implied warranty of merchantability, as established above, Plaintiff can sustain a Ch. 93A claim.

Defendant erroneously argues that Plaintiff cannot sustain a Ch. 93A claim based on breach of warranty because Plaintiff purportedly failed to mitigate her damages by refusing to accept a replacement Samsung Phone. Def't's Mem. at 17. But, as stated above, and as this Court previously found, Plaintiff was not required to accept a defective replacement Samsung Phone. Tufaro Decl. Ex. R at 31 ("Her failure to accept a replacement phone from Samsung does not, for present purposes, break the necessary causal connection as she took reasonable steps to mitigate her damages by getting both a replacement battery and a replacement phone from AT&T. A defective phone would not be a complete remedy and Rothbaum therefore was not required to accept it as a prerequisite for bringing a claim."). Therefore, Defendant's "failure to mitigate"

---

[6]     Defendant notes that Plaintiff could have sought to arbitrate her claims with AT&T, which is not a party to this lawsuit. Def't's Mem. at 15. Defendant, however, fails to articulate why this observation is even relevant. Plaintiff is not suing AT&T and Defendant was not a signatory to the agreement that contained the relevant arbitration clause. Non-signatories cannot "shield themselves from litigation in this court with an arbitration agreement they never signed." *Jacob v. Am. Med. Intl., Inc.,* No. 83-0426-F, 1985 U.S. Dist. LEXIS 21522, at *3 (D. Mass. Mar. 21, 1985). Accordingly, Defendant's argument is a complete non-sequitur.

argument fails.

### 2. Plaintiff Can Sustain A Claim Under Ch. 93A (Count II) Because Defendant Was Under A Duty To Disclose The Existence Of The Random Shut Down Defect

Defendant contends that Plaintiff cannot sustain a Ch. 93A claim based on a failure to disclose the existence of the Random Shut Down defect because, according to Defendant, "only a ███████████████ the devices had a propensity to ████████" Deft's Mem. at 18. Essentially, Defendant contends that the Random Shut Down Defect was a *de minimus* defect, and, therefore, did not give rise to a duty to disclose under Ch. 93A. Defendant's novel argument is contradicted by the facts established in this action, as well as by the law.

First, as explained above, the number of Samsung Phones affected by the Random Shut Down Defect was not, as Defendant falsely characterizes, "only a 'small percentage'." In fact, contrary to Samsung's argument that "only a 'small percentage' of the devices had a propensity to shut down," Plaintiff's expert testified that, based on his analysis of ██████████████████ ███████████████████████████████████████████████ ████████████████████████" Tufaro Decl. Ex. S at 30-31, 66, 69-72. (Emphasis added). Accordingly, Defendant's argument fails as a matter of fact.

Second, Defendant's argument fails as a matter of law because Defendant's argument relies upon a legal standard that was rejected by the Supreme Judicial Court of Massachusetts almost 20 years ago. In advancing its argument, Defendant relies on the "Level of Rascality" standard: "[t]he objectionable conduct must attain the level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce." *Levings v. Forbes & Wallace, Inc.*, 8 Mass. App. Ct. 498 (1979). In 1995, the Supreme Judicial Court of Massachusetts rejected this formulation of law in *Massachusetts Employers Exch. Ins. v. Propac-*

*Mass. Inc.*, 420 Mass. 39, 43 (1995) ("*Propac*"). In affirming the Superior Court's finding that the plaintiff had established a violation of Ch. 93A, the Supreme Judicial Court rejected the Level of Rascality standard, and instead employed one that focused on the "nature," "purpose," and "effect" of the challenged conduct. The *Propac* Court stated in relevant part:

> Propac argues that it relied in good faith on its construction of the agreement and that its breach of contract cannot alone be an unfair act or practice under G. L. c. 93A, § 2. *We view as uninstructive phrases such as "level of rascality" and "rancid flavor of unfairness" in deciding questions of unfairness under G. L. c. 93A. We focus on the nature of challenged conduct and on the purpose and effect of that conduct as the crucial factors in making a G. L. c. 93A fairness determination.*

*Propac*, 420 Mass. 39, 43(internal citations omitted)(emphasis added).[7] In light of the fact that the standard upon which Defendant rests its entire argument is no longer recognized as good law, Defendant's argument fails as a matter of law.

Plaintiff has alleged, and the record demonstrates, that the Random Shut Down Defect was very real and affected ███████ of the Samsung Phones. Tufaro Decl. Ex. S at 30-31, 66, 69-72. (Emphasis added). The facts further demonstrate that Defendant was aware of the Random Shut Down Defect, yet failed to disclose its existence to Plaintiff prior to the time that she purchased her Samsung Phone. *See, e.g.*, Tufaro Decl. Ex. C at ██████████████(demonstrating that Defendant was aware of the number of ████████ returns as early as ███████████). Finally, the facts demonstrate that Defendant attempted to ██████████████████ but that the ████████████ did not remedy the Random Shut Down Defect -- another fact that was not disclosed to Plaintiff. *See, e.g.*, Tufaro Decl. Ex. I.   The "nature," "purpose," and "effect" of

---

[7]      The District Court of Massachusetts recently recognized that *Propac* abrogated the Level of Rascality standard for purposes of summary judgment and trial. *See Lounge 22, LLC v. Scales, et al.*, 680 F. Supp. 2d 343, 346, n1 (D. Mass. 2010)(stating "[t]he Court is aware that the Supreme Judicial Court has disapproved of this specific formulation in characterizing unfairness for a jury in the Ch. 93A Context.").

Defendant's conduct was both deceptive and unfair, and therefore, forms the basis of a violation of Ch. 93A.

Additionally, all of the cases cited by Defendant are distinguishable. For example, in *Logan Equip. Corp. v. Simon Aerials, Inc.*, a case decided by this Court before the Supreme Judicial Court of Massachusetts' ruling in *Propac*, this Court found that evidence of a simple breach of contract could not sustain a claim for a violation of Ch. 93A. 736 F. Supp. 1188, 1204 (D. Mass. 1990). Here, the evidence does not simply demonstrate a simple breach of contract, but rather demonstrates that Defendant was aware of the Random Shut Down Defect prior to the time that Plaintiff purchased her Samsung Phone and concealed this material fact. The *Logan* court noted that, had the plaintiff been able to establish the same type of fact that Plaintiff, here, has established, the plaintiff in would have been able to establish a violation of Ch. 93A.[8] *Id.*

### C. Granting Summary Judgment On Plaintiff's Nationwide Claim For Breach of Warranty Under Texas Law (Count III) Is Premature Because The Parties Have Not Yet Engaged In Choice of Law Discovery

Without the benefit of any discovery on this issue, Defendant asserts that "the State of Texas bears no reasonable relationship to Plaintiff's transaction" and, therefore, Texas law cannot govern the nationwide claims for breach of implied warranty. Plaintiff has alleged, however, that Texas has a substantial relationship to the transaction because Samsung is headquartered in Texas, and, therefore, application to Plaintiff's claim is appropriate. *See Feeney v. Dell*, 454 Mass. 192, 206 (2009) (noting that Texas, the state in which the defendant

---

[8]    Furthermore, in *L.B. Corp. v. Schweitzer-Manduit Int'l, Inc.*, and *Underwood v. Risman*, the courts found that the plaintiffs could not establish liability under Ch. 93A for information not known to the defendants at the times of the respective transactions. 121 F. Supp. 2d 147, 153-54 (D. Mass. 2000)(no liability where plaintiff failed to demonstrate that the defendant was aware of actual well contamination); 414 Mass. 96, 100-102 (1993)(no liability for failure to disclose lead contamination of which seller was not aware). Here, the evidence establishes that Defendant was well aware of the existence of the Random Shut Down Defect, material information, which, had Plaintiff known, would have caused here not to have purchased her Samsung Phone.[8] Accordingly, both *LB Corp.* and *Underwood* are distinguishable.

was headquartered, had a substantial relationship to the transaction at issue, and, therefore, Texas law governed). Moreover, Texas law may apply to nationwide claims when the defendant is headquartered in Texas. *See Grant Thornton LLP v. Suntrust Bank*, 133 S.W.3d 342, 350-61 (Tex. App. Dallas 2004) (applying Texas law to a nationwide class because the misrepresentations and omissions flowed from work that occurred in Texas by a Texas-based corporation). Here the parties have not yet focused any discovery efforts on the issue of choice of law, accordingly, granting summary judgment, at this stage, is premature.

## CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that this Court deny Defendant's Motion for Summary Judgment in its entirety.

Dated: March 19, 2014

AMY ROTHBAUM, individually and on behalf of all others similarly situated,

By her attorneys,

/s/ Edward F. Haber
Edward F. Haber (BBO No. 215620)
ehaber@shulaw.com
Adam M. Stewart (BBO No. 661090)
astewart@shulaw.com
SHAPIRO HABER & URMY LLP
53 State Street
Boston, MA 02109
Tele: (617) 439-3939
Fax: (617) 439-0134

Paul O. Paradis, admitted *pro hac vice*
Gina M. Tufaro, admitted *pro hac vice*
HORWITZ HORWITZ & PARADIS
570 Seventh Avenue, 20th Floor
New York, NY 10018
Tele: (212) 986-4500
Fax: (212) 986-4501

20

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, was sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on March 19, 2014.

/s/ Edward F. Haber
Edward F. Haber