<u>REDACTED FOR PUBLIC DOCKET</u>

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

_____

| | |
|---|---|
| AMY ROTHBAUM, individually and on behalf of all others similarly situated, | ) ) ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, | ) ) |
| | ) |
| Defendant. | ) |

_____)

No. 11-CV-10509-MLW

**[PENDING MOTION FOR LEAVE TO FILE UNDER SEAL – FILED ON MARCH 27, 2014 (DKT. NO. 118)]**

## DEFENDANT STA'S REPLY MEMORANDUM
## IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

SAMSUNG TELECOMMUNICATIONS AMERICA, LLC

By its attorneys,

Robert M. Buchanan, Jr. (BBO# 545910)
(rbuchanan@choate.com)
Margaret E. Ives (BBO# 668906)
(mives@choate.com)
Jared M. Barnes (BBO# 679342)
(jbarnes@choate.com)
CHOATE, HALL & STEWART LLP
Two International Place
Boston, Massachusetts  02110
Tel: (617) 248-5000

March 31, 2014

# TABLE OF CONTENTS

**Page**

I.   PLAINTIFF'S CENTRAL ASSERTION HAS BEEN REFUTED ................................... 2

    A.   The Documents Submitted By The Plaintiff Demonstrate That Less Than ████ Of ██████████████ Devices Have Any Power-Related Problem ........ 3

    B.   Plaintiff's Unsupportable "100%" Assertion Does Not Survive Summary Judgment Merely Because It Is Stated By Her Expert ........................................... 6

II.  PLAINTIFF'S CLAIMS FAIL FOR THE FOUR REASONS ADVANCED BY STA IN ITS MEMORANDUM ........................................................................................ 6

    A.   Plaintiff Continued To Use Her Replacement Phone For 18 Months ................... 7

        1.   There Is No Genuine Dispute Of Material Fact .......................................... 7

        2.   Plaintiff's Arguments Do Not Save Her Claims ......................................... 8

    B.   Plaintiff Has Not Demonstrated That Either Phone Was Defective When She Received It ............................................................................................................ 9

        1.   Plaintiff Has The Burden Of Proof ............................................................. 9

        2.   There Is No Genuine Dispute Of Material Fact ........................................ 10

    C.   Plaintiff's Phone Does Not Have The Particular Defect That Is Alleged In The Complaint .................................................................................................. 12

    D.   STA Has Offered A Complete Remedy .............................................................. 13

        1.   Plaintiff's Arguments Do Not Save Her Implied Warranty Claim (Count One) .............................................................................................. 14

        2.   Plaintiff's Arguments Do Not Save Her Chapter 93A Claim (Count Two) .............................................................................................. 15

        3.   Plaintiff's Arguments Do Not Save Her Texas Law Claim (Count Three) ............................................................................................ 16

III. PLAINTIFF'S OPPOSITION MATERIALS DO NOT GIVE RISE TO ANY GENUINE DISPUTE OF MATERIAL FACT ................................................................ 17

    A.   Plaintiff's Materials Do Not Advance The Case Beyond The Materials That Were Already Addressed By STA's Motion ................................................ 17

    B.   There Is No Genuine Dispute Of Material Fact .................................................. 18

IV.  CONCLUSION ............................................................................................................. 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alves v. Mazda Motor of Am, Inc.*,
  448 F. Supp. 2d 285 (D. Mass. 2006) (Wolf, J.)........................................................10

*AT&T Mobility, LLC v. Conception*,
  131 S. Ct. 1740 (2011)...............................................................................................15

*BASF Corp. v. Sublime Restors., Inc.*,
  880 F. Supp. 2d 205 (D. Mass. 2012) ........................................................................14

*Boston Helicopter Charter, Inc. v. Agusta Aviation Corp.*,
  767 F. Supp. 363 (D. Mass. 1991) .............................................................................13

*Cipillone v. Yale Indus. Prods.*,
  202 F.3d 376 (1st Cir. 200)...................................................................................11, 12

*Compaq Computer Corp. v LaPray*,
  135 S.W.3d 657,681 (Tex. 2004)...............................................................................17

*Fed. Ins. Co. v. Pentair Residential Filtration, LLC,*
  Civil Action No. 12-10853-RGS, 2013 U.S. Dist. LEXIS 165646
  (D. Mass. Nov. 21, 2013).............................................................................................12

*General Electric v. Joiner*,
  522 U.S. 136 (1997)......................................................................................................6

*Grant Thornton LLP v. Suntrust Bank*,
  133 S.W.3d 342 (Tex. App. Dallas 2004)....................................................................17

*Greene v. Ablon*,
  Civil Action No. 09-10937-DJC, 2012 U.S. Dist. LEXIS 131958
  (D. Mass. Sept. 17, 2012) ...........................................................................................13

*Hannon v. Original Gunite Aquatech Pools, Inc.*,
  385 Mass. 813 (1982) ...............................................................................................7, 8

*Irvine v. Murad Skin Research Labs, Inc.*,
  194 F.3d 313 (1st Cir. 1999).........................................................................................6

*Jones v. Secord*,
  684 F.3d 1 (1st Cir. 2012)...........................................................................................17

*McGovern v. Brigham & Women's Hosp.*,
  584 F. Supp. 2d 418 (D. Mass 2008) (Young, J.) .........................................................6

*Mesnick v. General Elec. Co.*,
   950 F.2d 816 (1st Cir. 1991) ............................................................................................9, 10

*Transurface Carriers, Inc. v. Ford Motor Co.*,
   Civil Action No. 82-0801-Z, 1983 U.S. Dist. LEXIS 11482
   (D. Mass. Nov. 21, 1983) (Zobel, J.) ......................................................................................8

*Walsh v. Atamian Motors, Inc.*,
   10 Mass. App. Ct. 828 (1980) ..........................................................................................9, 10

*Zeolla v. Ford Motor Co.*,
   Civil Action No. 09-40106, 2013 U.S. Dist. LEXIS 10462
   (D. Mass. Jan. 24, 2013) (Saylor, J.) .......................................................................................6

*Zompetti v. Fleetwood Travel Trailers of Md., Inc.*,
   Docket Number 05-03172, 22 Mass. L. Rep. 515, 2007 Mass. Super. LEXIS 171 (2007). ...15

**Other Authorities**

F.R.C.P. Rule 56(f) ...........................................................................................................17

Local Rule 56.1 ...........................................................................................................1, 2, 3, 18

Mass. G.L. Chapter 93A ...........................................................................................................15, 16

Mass. G.L. Chapter 106, § 2-314..............................................................................................8

Plaintiff's submissions in opposition to summary judgment[1] -- her Memorandum Of Law In Opposition ("Opposition") (Dkt. No. 110), together with her Local Rule 56.1 Responses (Dkt. No. 111) -- concede that the Plaintiff continued to use her Samsung Captivate phone for 18 months after filing the Complaint, and concede that ███████████ of Captivate devices are in use. The supporting materials filed by the Plaintiff include many of the same documents previously filed by Defendant Samsung Telecommunications America ("STA").[2] These documents demonstrate that, ████████████████████, less than ██████ of the Captivate devices have been returned for any power-related problem.[3] Nonetheless, the Plaintiff's retained expert asserts that 100% of the devices are defective. This *ipse dixit* cannot stand in the face of the undisputed evidence.

Complex electronic devices are not perfect, and the law of warranty does not require them to be perfect. If a consumer receives a particular unit that is not fit for ordinary use, the manufacturer may repair or replace the unit in satisfaction of its warranty obligation. STA offered to replace the Plaintiff's device. Plaintiff, through her counsel, refused to accept the replacement. She asserted that STA could not possibly provide a unit that would be fit for ordinary use. The deposition of the Plaintiff, however, disclosed the surprising fact that the Plaintiff herself continued to use her phone for 18 months after filing this Complaint.

---

[1] STA filed its motion for summary judgment on January 21, 2014, along with a Memorandum in Support ("STA's MSJ Memorandum") (Dkt. No. 101). STA also filed a motion to preclude testimony by the Plaintiff's expert. *See* Memorandum In Support Of Its Motion To Preclude (Dkt. No. 102) ("STA's Daubert Memorandum").

[2] Plaintiff's counsel Gina Tufaro submitted a declaration in opposition to summary judgment (Dkt. No. 113). It attaches the full transcript of the deposition of the Plaintiff's expert (along with all of the STA documents marked as exhibits at the deposition), the full transcript of the deposition of the Plaintiff, some additional documents produced by STA, and the October 30, 2013 declaration of the Plaintiff. Counsel Paul Paradis submitted a declaration in opposition to the Daubert motion (Dkt. No. 112). It attaches some of the same materials, plus hearing transcripts.

[3] Even this figure is overstated. Consumers who cited a power-related reason, when they returned their Captivate devices, complained of several different problems. *See* p. 4, *infra*. When Samsung examined these returned devices, it turned out that many of them are not in fact defective, and most of them did not have the problem asserted by the Plaintiff.

Plaintiff's claims are untenable.

## I.  PLAINTIFF'S CENTRAL ASSERTION HAS BEEN REFUTED.

The Samsung Captivate smartphones are a marvel of complexity.  They are comprised of many sophisticated components.  *See, e.g.*, Declaration of Gina M. Tufaro ("Tufaro Decl."), Ex. D (STA_ROTH 0000004) (previously submitted by STA as Ex. B to the Affidavit of Jared M. Barnes ("Barnes Aff.")).  They provide multiple functionality, including the ability to send and receive phone calls, to send and receive texts, to download and run software applications, and to browse the Internet.  *See* Rothbaum Dep., Tufaro Decl., Ex. A, pp. 128-132; *see also* Thompson Report, p. 1; McAlexander Report (Dkt. No. 93), ¶¶ 15, 35.  They are used by customers in countless configurations of application software and in varied environmental conditions.  *See* McAlexander Report, ¶¶ 15-25.  It is not possible to devise a product that will work perfectly in all of these myriad situations.  *See* McAlexander Report, ¶¶22, 26.  All of this is common knowledge, and none of it is contested by the Plaintiff.  *Cf.* Plaintiff's Opposition, pp. 13-15.

Plaintiff's expert quotes eight documents produced by STA, which show that ██████ ████████████████████████████████████████████.  *See* STA's MSJ Memorandum, pp. 13-14; *see also* Tufaro Decl., Ex. D (STA_ROTH 0000004) (previously submitted by STA as Ex. B to the "Barnes Aff.).  Inexplicably, although they purport to rely on these same documents, the Plaintiff and her expert assert that "100%" of the Samsung Captivate devices are defective.  This assertion is essential to the Plaintiffs claims.  *See* Opposition, p. 14 (addressing implied warranty claim and asserting that "Samsung was not able to provide a 'functioning' replacement Samsung Phone"); Opposition, p. 17 (addressing Chapter 93A claims and asserting in bold type that "100% of the i897 Samsung Phones are defective").[4]

---

[4] *See also* Plaintiff's Response to Defendant's Rule 56.1 Statement of Undisputed Material Facts and Plaintiff's Separate Statement of Disputed Material Facts ("Plaintiff's 56.1 Statement"), Statement No. 15 ("Because 100% of

A. **The Documents Submitted By The Plaintiff Demonstrate That Less Than ███ Of ████████████████ Devices Have Any Power-Related Problem.**

Plaintiff's "100%" assertion is preposterous.  Plaintiff admits that "[f]avorable reviews of Samsung's Galaxy S smartphones have been received in well-known publications, such as Consumer Reports, Time Magazine, PC World, and PC Magazine" and that "[s]everal of these reviews, including a December 2010 article from Consumer Reports and a July 2010 review from PC Magazine, praised the Captivate in particular."  *See* Plaintiff's 56.1 Statement, p. 7, Statement No. 33 ("Admitted").

In response to the Court's Order (9/18/2013), STA produced a document containing data on the specific number of Captivate devices that have been returned for a power-related reason. *See* Second Affidavit of Timothy Rowden ("Second Rowden Aff.") (Dkt. No. 104), Ex. F (STA_ROTH 0000001).  Plaintiff submitted the same document.  *See* Tufaro Decl., Ex. S, Transcript Ex. 6.  STA's Memorandum explained this document at page 14, n. 8.  ███████ ███████████████████████████████████████ were produced for sale in the United States, and only █████ of these were returned for a Power On/Off reason.  ███████ ███████████████████████████████████████ were produced for sale in the United States, and only █████ of these were returned for a Power On/Off problem.  This fraction is below █████. Plaintiff's Opposition does not refute these figures.  *Cf.* Opposition, pp. 13-15. They eviscerate the Plaintiff's "100%" assertion.

Power-related problems included several different issues, not just the issue alleged by the Plaintiff.   *See* Barnes Aff., Ex. H (STA_ROTH 0000474), cited in McAlexander Report, ¶70.

████████████████████████████████████████████████  ████████

---

all the Samsung i897 Phones are defective, STA does not have the ability to provide Plaintiff with a 'new, fully functional replacement'"), Statement No. 31 (same), and Statement No. 37 (same).

████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████ *Id.* For the

majority of these returned devices, moreover, it turned out that the device did not have a defect at

all. *Id.* STA's summary judgment submission included a page stating this result. *See* Barnes

Aff., Ex. I (STA_ROTH 0000554); *see also* STA's MSJ Memorandum, p. 13. Plaintiff submits

the same document (*see* Tufaro Decl., Ex. E (STA_ROTH0000554)), but does not make any

effort to refute this finding. *Cf.* Opposition, p. 3.

     Plaintiff's "100%" assertion is also contradicted by the Plaintiff's own submissions of

fact. In her own Statement No. 1, the Plaintiff acknowledges that ██████ Captivate units were

sold during a period of twelve months. *See* Plaintiff's 56.1 Statement, p. 9. Plaintiff

acknowledges that less than ██████ of the Captivate devices were returned by customers, <u>for any</u>

<u>reason</u>, during the first six months of this period. *See id.*, p. 7, Statement No. 33. The rate of

returns █████████████████████████████████ *See* Tufaro Decl., Ex. S, Transcript

Ex. 6 (STA_ROTH 0000001) (previously submitted by STA as Ex. F to the Second Rowden

Aff.). It follows that ████████████████████ remained in use. There is no genuine basis

for the Plaintiff to assert that these units are defective.

     Plaintiff has no evidence to cite in support of her "100%" assertion -- only the *ipse dixit*

of her retained expert. Plaintiff's Statement Of Fact No. 6 states as follows:

      6. ███████████████████████████████ Tufaro Decl.
      Ex. S at 30-31, 66, 69-72.

*See* Plaintiff's 56.1 Statement, p. 10. The sole support cited is Ex. S to the Tufaro Declaration.

Ex. S is the transcript of the deposition of the Plaintiff's expert.[5] In turn, the Plaintiff's expert

---

[5] Plaintiff's Responses to STA's Statement No. 15 and No. 31 are to the same effect. Once again, the only support cited is the testimony of the Plaintiff's expert.

testified that "[t]he basis [of his opinion] is from the data and information supplied in the produced documents."  Thompson Dep., Tufaro Decl., Ex. S, p. 31.  Thus the expert's assertion rests entirely on quoting STA's documents.  STA's earlier briefing addressed all eight of the documents that he cited.  *See* STA's Daubert Memorandum, pp. 14-18;  STA's MSJ Memorandum, pp. 13-14.  They demonstrate that ████████████████████████████ ████  ███████████████████████████████.  *See* p. 2, *supra*;  *see also* STA's MSJ Memorandum, pp. 12-13.[6]

How did the Plaintiff's expert leap to his conclusion of "100%"?  He was asked at his deposition.  "Is there a principle or methodology that you're applying, and would you explain it to me, please?"  *See* Thompson Dep., Barnes Aff., Ex. J, at 70:24-25.  Plaintiff's expert responded that he had "nothing to add" beyond quoting the documents produced by STA.  *Id.* at 74:4-9.  His "100%" assertion is purely *ipse dixit*.

Ancillary to her "100%" assertion, the Plaintiff asserts that ███████████████████ ██████████████████.  *See* Opposition, p. 14.  This assertion is equally fictional.  ██████████ ████████████████████, the rate of power-related returns was less than ███.  *See* STA's MSJ Memorandum, p. 14, n. 8, citing Second Rowden Aff., Ex. F (STA_ROTH 0000001) (also submitted by Plaintiff as Tufaro Decl., Ex. S, Transcript Ex. 6).  ██████████████████ ██████████████████████.  *Id.*  STA's internal documents state that the ████████████████████████  *See* Barnes Aff., Ex. C (STA_ROTH 0000133).[7]

---

[6] Page 4 of the Plaintiff's Opposition asserts that:  "at the AT&T service center, the representative expressly confirmed to Plaintiff that the Samsung Phones were defective."  *See* Opposition, p. 4, citing to the Plaintiff's deposition at p. 111.  In fact, the Plaintiff's testimony was much less sweeping.  Plaintiff testified:  "[the AT&T representative] said that I wasn't the only person to have that complaint."  *See* Rothbaum Dep., Tufaro Decl., Ex. A, p. 111.  This assertion, if credited, only means that *some* one or more other consumers had the same complaint as the Plaintiff; it does not mean that *all* consumers had this complaint.

[7] Plaintiff cites three STA documents.  *See* Opposition, p. 3 and pp. 9-10, citing Tufaro Decl., Ex. H (STA_ROTH0000002), Ex. I (STA_ROTH0000304) (previously submitted by STA as Ex. F to the Barnes Aff.), and Ex. J (STA0000186) (previously submitted by STA as Ex. E to the Barnes Aff.).  STA addressed them earlier.

**B.     Plaintiff's Unsupportable "100%" Assertion Does Not Survive Summary Judgment Merely Because It Is Stated By Her Expert.**

Plaintiff argues that there must be an issue of fact, because her expert says so.  *See* Opposition, pp. 2, 17, 18.  Thompson's saying so does not make it so, however.  An expert's opinion must be based on facts.  *See, e.g., Irvine v. Murad Skin Research Labs, Inc.*, 194 F.3d 313, 320-21 (1st Cir. 1999).  A case cited by the Plaintiff herself -- *Zeolla v. Ford Motor Co.*, Civil Action No. 09-40106, 2013 U.S. Dist. LEXIS 10462, at *7 (D. Mass. Jan. 24, 2013) (Saylor, J.) (quoting *General Electric v. Joiner*, 522 U.S. 136, 146 (1997) -- explains the well-established rule that an expert cannot rely on *ipse dixit*.  *See Zeolla*, cited in Plaintiff's Daubert Opposition, p. 13.

Where an expert merely asserts a proposition, without any support for it, the expert's *ipse dixit* does not defeat summary judgment.  *See McGovern v. Brigham & Women's Hosp.*, 584 F. Supp. 2d 418, 426 (D. Mass 2008) (Young, J.).  *See also, General Electric,* 522 U.S. at 146-47.

A fortiori, where an expert's stated opinion is actually refuted by the evidence, the expert's opinion cannot defeat summary judgment.  *See id.*

**II.     PLAINTIFF'S CLAIMS FAIL FOR THE FOUR REASONS ADVANCED BY STA IN ITS MEMORANDUM.**

Plaintiff's dissatisfaction should be viewed in perspective.  STA submitted the Report of a technical expert, Joseph McAlexander, in support of its motion for summary judgment.  *See* McAlexander Report (Dkt. No. 82).  His Report states the appropriate context:

> 27.  A large volume of consumer devices in operation can cause even a reliable product to appear to have a problem.  If a consumer is told that the failure rate is only one in a hundred (1.0%), it may seem acceptable since the likelihood of failure is quite low.

---

*See* STA's Daubert Memorandum, pp. 11, 16-17.  According to these documents, ███████████████

███████████████ *See* Tufaro

Decl., Ex. I (STA_ROTH 0000304) (previously submitted by STA as Ex. F to the Barnes Aff.).  ████████

████████████████

However, since there may be a million units in use of a certain model, a 1% failure rate would result in ten thousand units experiencing the failure.  Although the failure rate is understood and is generally acceptable, an individual that experiences a failure may have  a different perspective . . . .

29.  To continue the example of Paragraph 27, a further aspect of the large volume of product produced for a given model is that one hundred of the ten thousand replacement units may also be defective.  One hundred consumers have bought a device, had it fail, have taken it back for replacement, and had the replacement unit fail.  However, they can still return that failed unit and have it replaced.  The probability of a third device failing is statistically quite remote.

*Id.,* ¶¶ 27-29.  Plaintiff makes no response.  *Cf.* Opposition, pp. 13-15.

As STA's MSJ Memorandum explained (*see* pp.  7, 9, 11, 12), the Plaintiff's claims fail for at least four reasons.  Plaintiff's Opposition does not shore up any of these deficiencies.

### A.   Plaintiff Continued To Use Her Replacement Phone For 18 Months.

Plaintiff received her Replacement Phone from AT&T in March of 2011.  *See* Opposition, p. 5.  Plaintiff confirms that she "did retain and use her phone until September 2012."  *See* Opposition, p. 10.  In Massachusetts, as in other jurisdictions, the implied warranty of  merchantability is not a promise of perfection.  It only requires that a product provide "the operating essentials."  *See* STA's MSJ Memorandum, p. 8, citing *Hannon v. Original Gunite Aquatech Pools, Inc.*, 385 Mass. 813, 822 (1982).  *Hannon* is still good law.  *See* STA's MSJ Memorandum, p. 8.  Plaintiff does not deny this.  *Cf.* Opposition, pp. 11-12.[8]

### 1.   There Is No Genuine Dispute Of Material Fact.

Plaintiff is a young college graduate in her twenties.  *See* Rothbaum Dep., Tufaro Decl., Ex. A, p. 9.  She used her Captivate device to make phone calls (five to twenty each day), to send and receive text messages (multiple times a day), to send and receive emails (daily), to play

---

[8] Plaintiff purports to distinguish *Hannon* on the ground that the defendant in that case offered a remedy.  *See* Opposition, p. 12.  STA has offered a remedy here as well.  *See* STA's MSJ Memorandum, pp. 12-20.

games, and to take photographs.  *See id.,* pp. 129-32.  Plaintiff also used the device to run

applications such as Facebook (probably), Twitter, and Words With Friends.  *See id.*, p. 128.

Plaintiff retained and used her phone for 18 months after she filed her Complaint.  *See*

Opposition, p. 10.  Plaintiff does not contend that she used any other phone during this period of

18 months.  *Cf.* Opposition, p. 10;  Rothbaum Decl., pp. 3-4.

 Plaintiff's Opposition now argues, however, that the "operating essentials" were lacking

on the occasions when the phone shut down.  *See* Opposition, p. 12, n. 2.  This argument cannot

be sustained in the face of the Plaintiff's testimony.  Plaintiff paid about $200 for her Captivate

device.  *See* Rothbaum Dep., Tufaro Decl., Ex. A, pp. 43, 69.  If the "operating essentials" were

lacking, then the Plaintiff would have turned the device over to her attorneys, and she would

have obtained a new phone.

### 2. Plaintiff's Arguments Do Not Save Her Claims.

 Plaintiff's Captivate device must have had the "operating essentials," because it was in

fact operated by the Plaintiff for 18 months.  Courts have granted summary judgment on

comparable facts.  *See* STA's MSJ Memorandum, pp. 8-9.  Plaintiff has not cited any case

holding that a device lacked the "operating essentials" where it was in fact operated.  *Cf.*

Opposition, pp. 10-12.

 In an effort to escape the principle of *Hannon*, the Plaintiff advances the more general

principle that a product must be "fit for the ordinary purposes for which such goods are used."

*See* Opposition, p. 10, quoting Mass. G.L. c.106. § 2-314.  That is the very same statute that

*Hannon* construed and applied.  A device that has the "operating essentials" is indeed "fit for the

ordinary purposes for which such goods are used."  *See Hannon*, 385 Mass. at 822.

 In a footnote  on Page 12, the Plaintiff acknowledges the teaching of *Transurface*

*Carriers, Inc. v. Ford Motor Co.,* Civil Action No. 82-0801-Z, 1983 U.S. Dist. LEXIS 11485, at

*4-5 (D. Mass. Nov. 21, 1983) (Zobel, J.), which held that a product had performed its "operating essentials."  In that case, a truck was driven over 200,000 miles during a period of 18 months.  Likewise, here, the Plaintiff operated her phone over a period of 18 months.

### B.    Plaintiff Has Not Demonstrated That Either Phone Was Defective When She Received It.

Plaintiff and Thompson both testify that they observed the Replacement Phone shut down.  These observations do not show, however, that the shut-down was caused by a defect.

### 1.    Plaintiff Has The Burden Of Proof.

Plaintiff  argues that STA has the burden of proof to  "establish that it's [sic] acts were not the cause of the defect in Plaintiff's Samsung Phones."  *See* Opposition, p. 12.  Plaintiff has this backwards.  The burden of proof at trial rests on the Plaintiff.  *See* STA's MSJ Memorandum, pp. 9-10, citing *Makuc v. Am. Honda Motor Co., Inc.*, 835 F.2d 389, 392-93 (1st Cir. 1987) ("In breach of warranty actions . . .  the plaintiff must show that the product was in a defective condition when it left the defendant's possession"); *Walsh v. Atamian Motors, Inc.*, 10 Mass. App. Ct. 828, 829 (1980) (same).  Plaintiff acknowledges that "[i]n order to avoid summary judgment, the nonmoving party must establish a genuine issue of material fact as to every element of its case."  *See* Opposition, p. 6, n. 1, quoting (twice) *Mesnick v. General Elec. Co.*, 950 F.2d 816, 825 (1st Cir. 1991).  Among other things, the Plaintiff must prove that her device malfunctioned because of a defect.

A complicated electronic device may power down for many disparate reasons.  *See* McAlexander Report, ¶¶ 22-29.  This is common knowledge.  In its 56.1 Statement, STA asserted that:

> 27.  In order to assess what caused the problem with Rothbaum's Replacement Phone, one would need to know what applications were installed by the user, which applications were active, the charge state of the battery, the phone's signal strength, and other

detailed information.  [McAlexander Report], at ¶¶ 3, 47-48, 78-79.

Plaintiff's Response reveals that she does not have any evidence to the contrary.

27.  Denied. 

*Id.*  Plaintiff's response cites the Technical Service Bulletin.  This document states that ███████

██████████████████████████████████████████████████████████████

*See* Tufaro Dec., Ex. D (STA_ROTH 0000004) (previously submitted by STA as Ex. B to the

Barnes Aff.).  This document does not state that all of the phones suffered the same problem.  It

does not serve as evidence that the Plaintiff's particular phone suffered this problem.  In order to

survive summary judgment, the Plaintiff must advance evidence tending to show that her

particular device malfunctioned because of the defect alleged in the Complaint.  Plaintiff's

Opposition does not advance any such evidence.  It follows that summary judgment should be

granted.  *See Alves v. Mazda Motor of Am, Inc.*, 448 F. Supp. 2d 285, 302 (D. Mass. 2006)

(Wolf, J.); *Walsh v. Atamian Motors, supra*; *see also* STA's MSJ Memorandum, pp. 9-11.

## 2.   There Is No Genuine Dispute Of Material Fact.

Page 9 of the Opposition asserts as follows:  "Defendant's Documents Establish That

Plaintiff's Samsung Phones Were Defective."  This is a spectacular misstatement.  STA's

documents do not address the individual phones held by the Plaintiff.[9]

According to the Plaintiff's Opposition, the Replacement Phone shut down soon after the

Plaintiff received it.  *See* Opposition, pp. 5, 8; *see also* Plaintiff's Response to STA's 56.1

---

[9] Each individual device is identified by a unique IMEI number.  The IMEI number for the Plaintiff's Replacement Phone was specified in all 15 digits in the Complaint.  *See* Second Amended Class Action Complaint ("Complaint" or "Compl.") (Dkt. No. 41), ¶ 47.  Plaintiff has not submitted any STA documents that address deficiencies in this individual device, or in the Plaintiff's first Captivate device.

Statement, p.7, Statement No. 30.  Ms. Rothbaum testified, however, that she loaded the

Replacement Phone with many of the same applications that she had been using with her prior

Samsung phone, including Facebook (probably), Twitter, and Words with Friends.  *See*

Rothbaum Dep., Tufaro Decl., Ex. A, pp. 128-30.  Plaintiff did not testify at her deposition that

she *first* experienced the problem and *then* loaded the phone with applications afterwards.  *Cf. id*.

Plaintiff's Declaration does not say this either.  *See* Declaration of Amy Rothbaum ("Rothbaum

Decl.") (Dkt. No. 57) (also submitted by Plaintiff as Ex. K to the Tufaro Decl.).  Thus the

Plaintiff has not submitted any evidence to support the assertion that the phone shut down before

she loaded or used the applications.[10]  Since the Plaintiff has not submitted any evidence on this

point, the Plaintiff cannot carry her burden of proof on this point, and her assertion does not

survive summary judgment.  *See Cipillone v. Yale Indus. Prods.*, 202 F.3d 376, 379 (1st Cir.

2000) ("Because there is no evidence that [Defendant's product] was defective when [Defendant]

delivered it to [Plaintiff] . . . summary judgment for [Defendant] was proper.").

 Next, the Plaintiff asserts that "Plaintiff's Expert's Testing Establishes That Plaintiff's

Samsung Phones Were Defective."  *See* Opposition, p. 9.  This topic heading purports to address

both of the two phones that came into the hands of the Plaintiff.  We can set aside the Plaintiff's

first phone, however, because it has not been tested.  *Cf.* Thompson Report, Barnes Aff., Ex. A,

p. 2.  Nobody knows where it is.  *See* STA's MSJ Memorandum, p. 2, n. 2; *see also* Plaintiff's

Response to STA's 56.1 Statement, p. 2, Statement No. 5.  Thompson testifies that he observed

one occasion when the Replacement Phone shut down.  *See* Thompson Dep., Tufaro Decl.,

Ex. S, pp. 81:10-87:1.  A problem of this nature has many possible causes, however.  *See*

---

[10] In her declaration, the Plaintiff states that she received and began using her Replacement Phone on March 1, 2011, and it shut down on March 5, 2011.  Declaration of Amy Rothbaum (Dkt. No. 57), ¶¶11, 13-15.  During her deposition, the Plaintiff testified that the Replacement Phone shut down "either the same day" she received it, "or the very next day."  Rothbaum Dep., Tufaro Decl., Ex. A, at 134:17-20.  Plaintiff was unable to recall the specific date and time.  *Id.* at 135:12-136:9.

McAlexander Report, ¶¶ 22-29.  Senior Engineer Chung had previously pointed out, for example, that the problem could be caused by the interaction of applications.  *See* Senior Engineer's Report on the Testing of Amy Rothbaum's Smartphone ("Chung Report") (Dkt. No. 78), ¶ 11.  Yet Thompson did not conduct any testing to determine which cause applied.  *See* STA's MSJ Memorandum, pp. 10-11.  As a result, the Plaintiff  cannot carry her burden of proof.[11]  *See Cipillone, supra.*

### C.    Plaintiff's Phone Does Not Have The Particular Defect That Is Alleged In The Complaint.

Plaintiff's Complaint alleges that when a phone has the so-called "Random Shut Down Defect," this means "a consumer must <u>remove</u> the battery from the phone, <u>re-insert</u> the battery, and <u>then</u> press the power button to turn the phone back on."  Compl., ¶ 22 (emphasis added).  The actual facts are that the Plaintiff was able to re-activate her Replacement Phone merely by pressing the power "on" button.  Rothbaum Dep., Tufaro Decl., Ex. A, at 97:23-98:1 ("I hit the power on button. . . .  And then the phone started up like it had been off.").  Plaintiff concedes this in her Opposition papers.  *See* Plaintiff's Response To STA's 56.1 Statement No. 8 ("Admitted") and No. 24 ("Admitted").  It follows, therefore, that the actual facts do not sustain the allegations of the Complaint.  *See* STA's MSJ Memorandum, p. 11.

Plaintiff responds in a footnote on page 13 of her Opposition.  Plaintiff asserts that this is "only a minor fact, not a material fact on which a motion for summary judgment can be

---

[11] In a footnote, the Plaintiff contends that her "expert was not required to rule out every potential cause for the Random Shut Down Defect."  *See* Opposition, p. 13, n. 3, citing *Fed. Ins. Co. v. Pentair Residential Filtration, LLC,* Civil Action No. 12-10853-RGS, 2013 U.S. Dist. LEXIS 165646 (D. Mass. Nov. 21, 2013).  Plaintiff misreads the *Pentair* case.  The expert in that case conducted an analysis.  Based on his analysis, the expert "explained that in his opinion, the cap failed because of a design defect, specifically that the inside corner radius where the crack originated was only 7% of the wall thickness whereas, in good engineering design an inside radius on plastic components should be 25% to 75% of the wall thickness...."  *Id.* at *7.  The court first found that the  *Pentair* expert had ruled <u>in</u>, with substantial detail, a specific defect and a specific cause.  The court then held that the expert was not required to "rule <u>out</u> every conceivable  alternative explanation of an event."  *Id.* at *13-14 (emphasis added).  In the case at bar the Plaintiff's expert has not reached the starting point of this debate.  He has not conducted any analysis to "rule in" a specific defect with a specific cause.

premised."  Plaintiff's casual approach to this issue is not correct.  As STA's expert has

explained, "this is not the failure mode described in the Complaint."  *See* McAlexander Report,

¶ 61.  It is common knowledge that complex electronic devices shut down for many different

reasons. *See* McAlexander Report, ¶ 22.  "The cause can be hardware, operation of the system

…, a particular running application of combination of applications running in parallel, computer

viruses, or various other sources of error." *Id.*  In order to determine the cause of the problem for

a particular device, one needs to review detailed information about the mode of failure.  *Id.*, ¶ 47.

Plaintiff recounted her experience with the phone during the course of her deposition.

*See* Rothbaum Dep., Tufaro Decl., Ex. A, pp. 97, 108-09, 119-20, 137-39, 169-70.  STA learned

the facts for the first time then.  By contrast, the Plaintiff and her counsel knew the facts before

they filed the  Complaint.  The allegation should have been stated correctly, not incorrectly.

Moreover, the Plaintiff has not sought leave to amend the Complaint.  The evidence at

trial cannot sustain the present Complaint.  For this reason, as well, summary judgment should be

granted. *See, e.g., Greene v. Ablon*, Civil Action No. 09-10937-DJC, 2012 U.S. Dist. LEXIS

131958, at *63-65, 70 (D. Mass. Sept. 17, 2012).

### D.      STA Has Offered A Complete Remedy.

STA offered to provide the Plaintiff with a fully functioning replacement.  *See* Affidavit

of Timothy Rowden ("Rowden Aff.") (Dkt. No. 77), Ex. D, p. 3.  Plaintiff, through her counsel,

refused to accept it. *See* Plaintiff Rothbaum's Memorandum in Opposition to Defendant's

Motion to Dismiss (Dkt. No. 28), p. 13.  STA has a defense so long as it is "willing and able" to

provide a functioning replacement. *See* STA's MSJ Memorandum, p. 15, citing *Boston*

*Helicopter Charter, Inc. v. Agusta Aviation Corp.*, 767 F. Supp. 363 (D. Mass. 1991).  As *Boston*

*Helicopter* teaches, a repair-or-replace remedy fails of its essential purpose only "where the

seller is either unwilling or unable to conform the goods to the contract."  767 F. Supp. at 373.

- 13 -

Plaintiff concedes the principle that STA will meet its legal obligation so long as STA is "willing and able" to provide a remedy.  *See* Opposition, p. 15.

Plaintiff's Opposition highlights case law that favors STA.  According to the Plaintiff, "[u]nder Massachusetts law the question of fitness for ordinary purposes is largely one centering around reasonable consumer expectations."  *See* Opposition, p. 10, quoting *Venezia v. Miller Brewing Co.,* 626 F.2d 188, 190 (1st Cir. 1980).  In applying this standard, "[t]he level of review is not that of the subjective expectations of the particular user, but the reasonable expectations of an ordinary user or purchaser."  *BASF Corp. v. Sublime Restors., Inc.*, 880 F. Supp. 2d 205, 217 (D. Mass. 2012) (Bowler, M.J.).  The undisputed evidence in this case demonstrates that ███████████████ consumers have been using the Captivate devices in the United States.  *See* pp. 3-4, *supra*.  Plaintiff has submitted no evidence that these devices failed to meet "the reasonable expectations of an ordinary user."  Plaintiff's testimony about her own subjective expectations is not relevant here.  *Cf.* Opposition, p. 2.

### 1.  Plaintiff's Arguments Do Not Save Her Implied Warranty Claim (Count One).

On Page 17 the Opposition asserts in bold type that "100% of the i897 Samsung Phones are defective."  As demonstrated earlier, this assertion is fictional.  Plaintiff's Opposition cites only one source for this assertion:  the *ipse dixit* of the Plaintiff's expert.  *See* p. 4, *supra*.  Plaintiff's expert cannot make up the facts, however.  His *ipse dixit* cannot defeat summary judgment.  *See* p. 5, *supra*.

Plaintiff also points to her own experience with the phone she received from AT&T in March 2011.  "Plaintiff's experience," she argues, "establishes the Defendant was not, and is not, able to provide Plaintiff with a 'functioning' replacement."  *See* Opposition, p. 14.  This argument carries no force at all.  Plaintiff admits that ██████████████ of phones were

sold.  *See* Plaintiff's Response to 56.1 Statement No. 33.  Plaintiff had experience with one

particular unit.  Her experience does not speak for the other ███████████████ .

Plaintiff relies on *Zompetti v. Fleetwood Travel Trailers of Md., Inc.*, Docket Number 05-

03172, 22 Mass. L. Rep. 515, 2007 Mass. Super. LEXIS 171 (2007).  *See* Opposition, p. 15.  As

the Plaintiff describes that case, "an issue of fact was raised as to whether the repairs failed the

warranty's essential purpose."  In this case, by contrast, STA offered to provide a replacement,

but the Plaintiff (through her counsel) refused to accept it.  *See* Plaintiff's Response To 56.1

Statement No. 6.  STA (as opposed to AT&T) has never been given an opportunity to provide a

remedy.  Thus the *Zompetti* case is not on point.

In addition, the Plaintiff could have obtained a remedy from AT&T through its arbitration

process.  Plaintiff writes that she does not understand why STA mentioned the AT&T arbitration.

*See* Opposition, p. 16, n. 6.  Its relevance was stated in STA's Memorandum.  *See* STA's MSJ

Memorandum, p. 15 and n. 9.  The U.S. Supreme Court has ruled that the AT&T remedy is

satisfactory, because the consumer will be given either prompt redress or else $10,000.  *See*

*AT&T Mobility, LLC v. Conception*, 131 S. Ct. 1740, 1753 (2011).  The AT&T remedy was

available to the Plaintiff.[12]  For this reason, as well, the Plaintiff cannot demonstrate that STA is

"unwilling" or "unable" to provide her with a meaningful remedy.

> **2.     Plaintiff's Arguments Do Not Save Her Chapter 93A Claim (Count Two).**

STA demonstrated that the Plaintiff has a duty to mitigate damages.  *See* STA's MSJ

Memorandum, pp. 17-18.  Plaintiff does not contest this principle.  *Cf.* Opposition, pp. 16-17.

---

[12] Plaintiff asserts that she did not agree to an arbitration agreement.  *See* Plaintiff's Response To 56.1 Statement No. 9.  This mere assertion is not sufficient.  STA's submission demonstrates that AT&T provides an arbitration process as part of AT&T's standard contractual terms.  *See* Rowden Aff., Ex. B.  The relevant contractual language is quoted in STA's MSJ Memorandum at p. 15, n. 9.  Plaintiff testified at her deposition that she does not remember whether she signed a contract or not.  *See* Rothbaum Dep., Tufaro Decl., Ex. A, pp. 194-95.  Plaintiff therefore has no evidence to refute STA's demonstration.

Instead, the Plaintiff argues that STA is unable to provide a functioning device, and therefore the Plaintiff did not miss an opportunity to mitigate damages. *Id.* In order to sustain this argument, once again, the Plaintiff is forced to assert that 100% of the Captivate phones are defective. *See id.* The "100%" assertion cannot be sustained, as we have shown above.

STA also demonstrated that it had no duty, under Chapter 93A, to disclose that █████ ██████ ████████████████████ . *See* p. 2, *supra*; *see also* STA's MSJ Memorandum, pp. 18-19. Whenever a device is manufactured in hundreds of thousands, it is likely that some percentage of them will experience problems in the field. *See* McAlexander Report, ¶¶ 28, 37. This is to be expected. *See* STA's MSJ Memorandum, p. 5. In response, Plaintiff only repeats her unsupported "100%" assertion. *See* Opposition, p. 17.

Plaintiff criticizes STA's summary of the legal standard to be applied under Chapter 93A. *See* Opposition, pp. 17-18. According to the Plaintiff, it is no longer sufficient to consider whether the defendant's conduct attained a level of "rascality." Rather, according to the Plaintiff, we should consider "the nature of challenged conduct and ... the purpose and effect of that conduct." *Id., quoting Massachusetts Employers Exch. Ins. v. Propac-Mass. Inc.*, 420 Mass. 39, 43 (1995). This purported distinction makes no difference in the case at bar. Where only a ███████████████████████████████ , there is no duty to disclose. Plaintiff does not cite any case that establishes such a duty. Therefore, no matter which verbal formulation is applied -- whether the "rascality" formulation cited by STA, or the "purpose and effect" formulation cited by the Plaintiff -- either way, the Plaintiff cannot recover.

### 3. Plaintiff's Arguments Do Not Save Her Texas Law Claim (Count Three).

Plaintiff's Count Three asserts breach of the implied warranty of merchantability under the law of Texas. STA has demonstrated that the law of Texas does not apply, because the

Plaintiff made her purchase in Massachusetts, and she was a resident of New York at the time. *See* STA's Memorandum, pp. 19-20.  In response, the Plaintiff asserts that summary judgment is premature, because "the parties have not yet focused any discovery efforts on the issue of choice of law."  *See* Opposition, p. 20.  This assertion is yet another fiction.  Plaintiff does not identify any discovery that she would need in order to address this issue.  Rule 56(f) requires her to do so. *See Jones v. Secord*, 684 F.3d 1, 6 (1st Cir. 2012).  Accordingly, the Plaintiff's flimsy argument should be rejected, and summary judgment should be granted.[13]

## III.   PLAINTIFF'S OPPOSITION MATERIALS DO NOT GIVE RISE TO ANY GENUINE DISPUTE OF MATERIAL FACT.

### A.   Plaintiff's Materials Do Not Advance The Case Beyond The Materials That Were Already Addressed By STA's Motion.

STA filed its motion for summary judgment on January 21, 2014 (Dkt. No. 88).  When the time came near for the Plaintiff to submit her Opposition, the Plaintiff requested an extension.  *See* Dkt. No. 105.  Plaintiff's Opposition and supporting materials were ultimately submitted on March 19, 2014.  As a result of the extension, the Plaintiff had  nearly two months to prepare.  Yet the materials filed on March 19 were not selected or organized.[14]  Plaintiff's Opposition does not explain why there is relevance to all 736 pages of the deposition transcripts, or to all 376 pages of the deposition exhibits.

---

[13] Plaintiff cites to a case named *Grant Thornton LLP v. Suntrust Bank*, 133 S.W.3d 342, 350-61 (Tex. App. Dallas 2004).  That case was a suit against a public accounting firm for errors and omissions in the registration statement for a company's initial public offering.  The company was based in Texas, and so the accounting firm's services had their locus in Texas.  By contrast, the transaction in this case has no connection to the State of Texas.  Given the facts of Ms. Rothbaum's claim, the Texas courts would not apply Texas law.  *See Compaq Computer Corp. v LaPray*, 135 S.W.3d 657,681 (Tex. 2004) (although the defendant had its headquarters in Texas, this fact was deemed insufficient to support the application of Texas law, where out-of-state consumers claimed breach of warranty based on allegedly defective computers).

[14] Moreover, when the Plaintiff initially submitted her materials in opposition to summary judgment, on March 19, 2014, some of STA's "Highly Confidential" documents were filed on the public docket.  This was a breach of the protective order in this case (Dkt. No. 57).  STA's counsel immediately notified the Plaintiff's counsel.  The next day Plaintiff's counsel moved for leave to substitute redacted copies.  *See* Dkt. Nos. 115, 116.  Plaintiff's motion acknowledged that the Plaintiff had filed "highly confidential [STA] materials that should not have been publicly filed pursuant to the Stipulated Protective Order."  STA reserves the right to seek redress if any harm has resulted.

STA's Memorandum addressed the central materials now submitted by the Plaintiff. Plaintiff's declaration was submitted earlier (*see* Dkt. No. 75), and STA's MSJ Memorandum addressed it on Page 3.  The Report and deposition of the Plaintiff's expert were addressed by STA on Pages 4-5 and 10-14.  Plaintiff's expert cited eight STA documents in his expert Report, and STA's Daubert Memorandum addressed all eight.  These documents demonstrate that ███

████████████████████████████████████████████████████████████

███████.  *See* STA's MSJ Memorandum, p. 13.  Plaintiff now submits two additional STA documents, which are to the same effect.  *See* Tufaro Decl., Ex. C (STA_ROTH 0000150 through STA_ROTH 0000153); Ex. D (STA_ROTH 0000252).

## B.     There Is No Genuine Dispute Of Material Fact.

As required by Local Rule 56.1, STA submitted a Statement of Undisputed Material Facts on January 21, 2014 (Dkt. No. 89).  Plaintiff responded with a pleading titled "Plaintiff's Response To Defendants' Rule 56.1 Statement Of Undisputed Material Facts and Plaintiff's Separate Statement Of Disputed Materials Facts" (03/19/2014) (Dkt. No. 111).  STA advanced 40 assertions of fact.  Plaintiff admits 20 of STA's Statements.  Plaintiff quibbles with the wording of ten of STA's Statements.  *See* Plaintiff's Response to 56.1 Statement Nos. 5, 16, 22, 25, 26, 32, 36, 38, 39, 40.  Plaintiff asserts an immaterial dispute as to Statement Nos. 9, 10 and 18.[15]  Plaintiff only purports to advance a material dispute in response to Statement Nos. 15, 17, 27, 30, 31, 35 and 36.  There is no genuine dispute:

- Statement No. 15 has been addressed on Page 4, note 5, above.

---

[15] For example, the Plaintiff's Response to Statement No. 18 is incorrect, but immaterial.  The Consent Agreement Establishing Non-Destructive Testing Protocol is attached to the Barnes Aff. as Ex. L.  Its Section II(7), on page 2, provides that:  "'The Testing Period' means the period of time during which Defendant is permitted to test Plaintiff's Smartphone and shall last no longer than 72 hours from the time Defendant receives Plaintiff's Smartphone."  [Emphasis added.]  This provision was inserted at the insistence of Plaintiff's counsel.

- <u>Statement No. 17</u> should not have been denied.  Plaintiff  testified at her deposition that she continued using her Replacement Phone for a period of 18 months after she filed the Complaint.  *See* pp. 7-8, *supra*.  Plaintiff's Captivate device enabled her to make 5-20 phone calls per each day, to send and receive multiple text messages each day, to send and receive emails every day, to play games, and to take photographs.  *See* Rothbaum Dep., Tufaro Decl., Ex. A, pp. 129-32.  Consistent with this testimony, STA stated as follows:

  > 17.  Plaintiff Rothbaum continued to use the Replacement Phone until September 2012.  Rothbaum Dep., Barnes Aff., Ex. K, at 167:20-169:22.  At that time she provided the Replacement Phone to her attorneys so that it could be tested in conjunction with this action.  *Id.*

  Plaintiff's response reads as follows:

  > 17.  Denied.  Plaintiff Rothbaum was denied the use of her Replacement Phone because it too was plagued by the Random Shut Down Defect which repeatedly caused the phone to randomly shut down on a continuous basis.  Rothbaum Dep. Tr. attached as Exhibit A to the Tufaro Decl. at 134:17-21.

  This response is unsupported.  Plaintiff did not testify that she was "denied the use of" her phone.  This wording is an invention of counsel

- <u>Statement No. 27</u> has been addressed on Pages 9-10 above.

- <u>Statement No. 30</u> has been addressed on Pages 10-11 above.

- <u>Statement No. 31</u> has been addressed on Page 4, note 5, above.

- <u>Statement No. 35</u> should have been admitted.  Plaintiff's Response contains an elementary error.  STA stated as follows:

  > 35.  Only a minority of the Captivate phones were ever reported to have any problem.  Second Rowden Aff., Ex. F (STA_ROTH 0000001); *see also* Barnes Aff., Ex. D (STA_ROTH 0000170); Ex. H (STA_ROTH 0000471).

  Plaintiff  responds as follows:

  > 35.  Denied.
  > 

This response is a non-sequitur.  STA's statement addressed (A) how many Captivate devices were returned for any reason.  Plaintiff's response addresses (B) the subset of returned devices that were returned for a particular reason.  Plaintiff asserts that Set B is ██ of Set A.[16]  This assertion tells us nothing about the size of Set A.  *See* p. 4, *supra*;  *see also* STA's MSJ Memorandum, p. 13.

- Plaintiff's Response to <u>Statement No. 36</u> is to the same effect as her Response to Statement No. 35.

## IV.   <u>CONCLUSION.</u>

Plaintiff was given ample opportunity to submit evidence in support of her claims.

Plaintiff failed to do so.  Her claims rest entirely on the "100%" assertion of her retained expert.

The expert's *ipse dixit* is refuted, however, by the same evidence that he cites.  Such an assertion

does not defeat a motion for summary judgment.  For all of the reasons stated above and in

STA's earlier Memorandum, summary judgment should be granted dismissing the Plaintiff's

claims in their entirety.

Dated:  March 31, 2014

Respectfully submitted,

SAMSUNG TELECOMMUNICATIONS AMERICA, LLC,

By its attorneys,

<u>/s/ *Robert M. Buchanan, Jr.*</u>
Robert M. Buchanan, Jr. (BBO# 545910)
(<u>rbuchanan@choate.com</u>)
Margaret E. Ives (BBO# 668906)
(<u>mives@choate.com</u>)
Jared M. Barnes (BBO# 679342)
(<u>jbarnes@choate.com</u>)
Choate, Hall & Stewart LLP
Two International Place
Boston, Massachusetts  02110
Tel: (617) 248-5000

---

[16] This assertion is an exaggeration.  When Captivate devices were returned for a power-related reason, many of them did not have the problem alleged by the Plaintiff, and many did not have any defect at all.  *See* p. 4, *supra*.

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically in redacted form to the registered participants as identified on the Notice of Electronic Filing (NEF) and that unredacted copies will be sent to all counsel via email and overnight mail on March 31, 2014. STA has filed a motion for leave to submit under seal the unredacted full-text version of this document, and that motion remains pending.

/s/ Robert M. Buchanan, Jr.
Robert M. Buchanan, Jr. (BBO# 545910)

6096380