<u>REDACTED FOR PUBLIC DOCKET</u>

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

_____
)
AMY ROTHBAUM, individually and on )
behalf of all others similarly situated, )
) No. 11-CV-10509-MLW
Plaintiff, )
) **[PENDING MOTION FOR LEAVE**
v. ) **TO FILE UNDER SEAL – FILED**
) **ON MARCH 27, 2014 (DKT. NO.**
SAMSUNG TELECOMMUNICATIONS ) **118)]**
AMERICA, LLC, )
)
Defendant. )
_____)

**DEFENDANT STA'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO
PRECLUDE THE EXPERT REPORT OF KEN THOMPSON**

SAMSUNG TELECOMMUNICATIONS
AMERICA, LLC,

By its attorneys,

Robert M. Buchanan, Jr. (BBO# 545910)
(rbuchanan@choate.com)
Margaret E. Ives (BBO# 668906)
(mives@choate.com)
Jared M. Barnes (BBO# 679342)
(jbarnes@choate.com)
Choate, Hall & Stewart LLP
Two International Place
Boston, Massachusetts  02110
Tel: (617) 248-5000

March 31, 2014

**TABLE OF CONTENTS**

**Page**

I.  THE GOVERNING PRINCIPLES .................................................................................... 1

II.  THE THOMPSON REPORT DOES NOT SATISFY THE REQUIREMENTS SET
FORTH IN FEDERAL RULE OF EVIDENCE 702 AND *DAUBERT* ............................ 3

    A.  Thompson Did Not Conduct Any Testing Of, Or Employ Any Recognized
Methodology With Respect To, Ms. Rothbaum's Replacement Phone. ................ 5

    B.  Thompson Did Not Employ Any Recognized Methodology In Reviewing
STA's Documents. ................................................................................................. 8

    C.  Thompson's "100%" Opinion Is Refuted By The Evidence ............................... 10

III.  CONCLUSION ............................................................................................................ 12

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Altieri v. State Farm Fire and Cas. Co.*,
   Civil Action No. 09-2342, 2011 U.S. Dist. LEXIS 53231 (E.D. Pa. May 17, 2011) ...............6

*Alves v. Mazda Motor of Am., Inc.*,
   448 F. Supp. 2d 285 (D. Mass. 2006) (Wolf, J.) ...................................................................2, 8

*BASF Corp. v. Sublime Restorations, Inc.*,
   880 F. Supp. 2d 205 (D. Mass. 2012) ...................................................................................3

*Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*,
   509 U.S. 209 (1993) ................................................................................................................12

*Correa v. Cruisers*,
   298 F.3d 13 (1st Cir. 2002) .....................................................................................................7

*Daubert v. Merrell Dow Pharms., Inc.*,
   509 U.S. 579 (1993) ........................................................................................................1, 3, 7

*Fed. Ins. Co. v. Pentair Residential Filtration, LLC*,
   Civil Action No. 12-10853-RGS, 2013 U.S. Dist. LEXIS 165646
   (D. Mass. Nov. 21, 2013) ...............................................................................................7, 8, 10

*General Elec. Co. v. Joiner*,
   522 U.S. 136 (1997) ....................................................................................................4, 5, 11, 12

*Hickerson v. Dist. Pride Mobility Prods. Corp.*,
   470 F.3d 1252 (8th Cir. 2006) ...............................................................................................6, 8

*Irvine v. Murad Skin Research Labs, Inc.*,
   194 F.3d 313 (1st Cir. 1999) .................................................................................................12

*Jahn v. Equine Servs., PSC*,
   233 F.3d 382 (6th Cir. 2000) ..................................................................................................8

*McGovern v. Brigham & Women's Hosp.*,
   584 F. Supp. 2d 418 (D. Mass. 2008) (Young, J.) ...............................................................8, 12

*Ruiz-Troche v. Pepsi Cola of Puerto Rico Bottling Co.*,
   161 F.3d 77 (1st Cir. 1998) ..................................................................................................1, 2

*Shuck v. CNH Am., LLC*,
   498 F.3d 868 (8th Cir. 2007) ..................................................................................................6

*Zeolla v. Ford Motor Co.*,
    Civil Action No. 09-40106-FDS, 2013 U.S. Dist. LEXIS 10462
    (D. Mass. Jan. 24, 2013) ............................................................................................................4

**Other Authorities**

Local Rule 56.1 ............................................................................................................................10

F.R.E. Rule 702...................................................................................................................1, 3, 4

In support of her contention that Ken Thompson's expert testimony should be permitted by this Court, the Plaintiff argues that (1) Thompson used the same methodologies as Senior Engineer Chung; (2) Thompson was not required to rule out every conceivable cause for the shut-down issues experienced by Ms. Rothbaum; and (3) Thompson properly applied his engineering experience when he observed the Replacement Phone and reviewed the documents produced by Samsung Telecommunications America ("STA").  These contentions do not have merit.  Plaintiff has failed to demonstrate that Thompson's opinions were "arrived at in a scientifically sound and methodologically reliable fashion" as required by Rule 702 and *Daubert*.

Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Preclude the Expert Report of Ken Thompson (the "Daubert Opposition" or "Daubert Opp.") merely repeats the same conclusory assertions that were stated by Thompson in his Report and deposition.[1] These opinions are *ipse dixit*.  Just because Thompson said them, does not make them credible. Thompson's Report and testimony should be precluded because:  (A) Thompson engaged in nothing more than a visual inspection and observation of Ms. Rothbaum's Replacement Phone; and (B) the documents and data produced by STA refute Thompson's opinions, although he purports to rely on those same documents and data.

## I.    THE GOVERNING PRINCIPLES

Plaintiff accuses STA of misstating the law in light of *Ruiz-Troche v. Pepsi Cola of Puerto Rico Bottling Co.*, 161 F.3d 77, 81 (1st Cir. 1998).  *See* Daubert Opp., p. 9.  As

---

[1] For example, the Plaintiff's Daubert Opposition asserts, without any valid support, that:

- "Plaintiff's Captivate Phone is defective because this phone was designed and manufactured in a way that causes this phone to randomly power itself off when it is in 'sleep' mode without any human intervention" (Daubert Opp. at 4-5, 9-10); and

- *All* of the Captivate phones sold in the United States are defective "because they too were designed and manufactured in a way that causes these phones to randomly power themselves completely off when they are in 'sleep' mode without any human intervention" (Daubert Opp. at 5-6).

demonstrated by the very language of *Ruiz-Troche* quoted by the Plaintiff, the principles stated

in *Ruiz-Troche* are fully consistent with this Court's subsequent decision in *Alves v. Mazda*

*Motor of Am., Inc.*, 448 F. Supp. 2d 285, 299 (D. Mass. 2006) (Wolf, J.),[2] which was cited by

STA.  *See* STA's Memorandum in Support of Its Motion to Preclude the Expert Report of Ken

Thompson ("Daubert Memorandum"), at 4, 5, 8.  As is well-established, the "proponent of the

evidence [must] show that the expert's conclusion has been arrived at in a scientifically sound

and methodologically reliable fashion."  *Ruiz-Troche*, 161 F.3d at 85.

> [T]he trial judge [is required] to evaluate an expert's proposed testimony for both
> reliability and relevance prior to admitting it....  The requisite review for reliability
> includes consideration of several factors:  the verifiability of the expert's theory or
> technique, the error rate inherent therein, whether the theory or technique has
> been published and/or subjected to peer review and its level of acceptance within
> the scientific community....  [D]ue investigation of such matters will ensure that
> proposed expert testimony imparts "scientific knowledge" rather than
> guesswork....  To be admissible, expert testimony must be relevant not only in the
> sense that all evidence must be relevant ... but also in the incremental sense that
> the expert's proposed opinion, if admitted, likely would assist the trier of fact to
> understand or determine a fact in issue....  In other words, Rule 702, as visualized
> through the *Daubert* prism, "<u>requires a valid scientific connection</u> to the pertinent
> inquiry as a precondition to admissibility...."  [T]rial judges may evaluate the
> data offered to support an expert's bottom-line opinions <u>to determine if that data
> provides adequate support</u> to mark the expert's testimony as reliable.

*Ruiz-Troche*, 161 F.3d at 80-81 (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579,

589-595 (1993); *General Elec. Co. v. Joiner*, 522 U.S. 136 (1997))(emphasis added).  In *Ruiz-*

*Troche*, the expert's opinion was "premised on an accepted technique, embodied a methodology

that has significant support in the relevant universe of scientific literature, and was expressed to a

reasonable degree of . . . certainty."  *Id*. at 85.  Thompson, in contrast, neither rests his opinions

on the evidence in this case, nor applies any scientific methodology whatsoever to that evidence.

---

[2] This Court's decision in *Alves* was issued eight years after the First Circuit's decision in *Ruiz-Troche*.  There can
be no question that *Alves* is good law and was correctly cited by STA.

## II.   THE THOMPSON REPORT DOES NOT SATISFY THE REQUIREMENTS SET FORTH IN FEDERAL RULE OF EVIDENCE 702 AND *DAUBERT*.

As set forth in STA's Daubert Memorandum, Thompson failed to describe *any* specific methodology or testing in his report, let alone provide sufficient detail to allow this Court to find that Thompson's opinions meet the standards set forth in Rule 702 and *Daubert*. *See BASF Corp. v. Sublime Restorations, Inc.,* 880 F. Supp. 2d 205, 214 (D. Mass. 2012). Thompson advances an opinion that Ms. Rothbaum's Replacement Phone is defective. The full sum of the support offered for this opinion is the conclusory (and incorrect) statement that *all* Captivate phones "were designed and manufactured in a way that causes these phones to randomly power themselves completely off when they are in 'sleep' mode without any human intervention." *See* Daubert Opp., pp. 4-5; *see also* Thompson Report, attached as Exhibit A to the Barnes Aff., at 2.[3]

In his deposition, Thompson added that the so-called random shutdown defect alleged in the Complaint was the result of ███████████████████████████████ ██████████████████" *See* Daubert Opp., p 5. This additional statement is merely a description, not an explanation. When there is insufficient power, the phone shuts down. At his deposition Thompson was asked what causes the insufficient power condition, and Thompson testified that he does not know. *See* STA's Daubert Memorandum, p. 7; *see also* Thompson Dep., Barnes Aff., Ex. J, at 91:4-5. Thompson testified as follows:

> Q.   Based on your expertise and analysis, have you formed an opinion as to what could cause the phone to hit that off switch?
>
> A.   I've not formed an opinion on what exactly is causing it.

---

[3] In support of its motion, STA submitted the Thompson Report, all of the documents cited in his Report, and several additional documents. These materials were attached to the Affidavit of Jared M Barnes, ("Barnes Aff.") ("Dkt. No. 91"), and the Second Affidavit of Timothy Rowden ("Second Rowden Aff.") (Dkt. No. 92). Plaintiff now submits many of the same materials, plus *all* of the documents that were marked as exhibits at Thompson's deposition. Plaintiff's materials are attached to the Declaration of her counsel, Paul Paradis (Dkt. No. 112).

Thompson Dep., Barnes Aff., Ex. J, at 90:20-22; 91:4-5.

Federal Rule of Evidence 702 requires more.  As noted in one of the same cases relied on by the Plaintiff, the Court must "ensure that there is an adequate fit between the expert's methods and his conclusions."  *Zeolla v. Ford Motor Co.*, Civil Action No. 09-40106-FDS, 2013 U.S. Dist. LEXIS 10462, at *6-7 (D. Mass. Jan. 24, 2013) (internal quotations omitted).  *See* Daubert Opp., p. 13 (citing *Zeolla*).  Where, as here, there are "[s]ignificant analytical gaps between the data and the opinion proffered by an expert" -- where the expert's opinion appears to be "'based on conjecture or speculation from an insufficient evidentiary foundation,'" and "is 'connected to existing data only by the *ipse dixit* of the expert'" -- the Court may exclude the expert's opinion. *Zeolla*, 2013 U.S. Dist. LEXIS 10462, at *6-7  (*quoting Damon v. Sun Co.*, 87 F.3d 1467, 1474 (1st Cir. 1996); *General Elec.*, 522 U.S. at 146).

The Supreme Court's decision in *General Electric v. Joiner* is particularly instructive.  In that case, experts were retained to state an opinion regarding the cause of the plaintiff's cancer. The experts characterized their conclusions as "more likely than not" and "caused by or contributed to in a significant degree."  *General Electric*, 522 U.S. at 143.  The District Court excluded these experts.  The studies upon which the experts relied did not support their opinions, the District Court found.  *Id.* at 144.  The Supreme Court upheld this ruling.  The Supreme Court noted that the proponent had failed to explain "how and why the experts could have extrapolated their opinions from these seemingly far-removed . . . studies."  *Id.* at 144-145 ("The issue was whether *these* experts' opinions were sufficiently supported by the animal studies on which they purported to rely.  The studies were so dissimilar to the facts presented in this litigation that it was not an abuse of discretion for the District Court to have rejected the experts' reliance on

- 4 -

them."). In holding that the District Court acted properly in excluding the experts' opinions, the

Supreme Court definitively stated:

> [Plaintiff] claims that because the District Court's disagreement was with the
> conclusion that the experts drew from the studies, the District Court committed
> legal error and was properly reversed by the Court of Appeals.... Trained experts
> commonly extrapolate from existing data. But nothing in either *Daubert* or the
> Federal Rules of Evidence requires a district court to admit opinion evidence
> which is <u>connected to existing data only by the *ipse dixit* of the expert</u>. A court
> may conclude that there is simply <u>too great an analytical gap</u> between the data and
> the opinion proffered.

*Id.* at 146 (internal citations omitted)(emphasis added).

### A.   Thompson Did Not Conduct Any Testing Of, Or Employ Any Recognized Methodology With Respect To, Ms. Rothbaum's Replacement Phone.

The first section of Thompson's Report recounts an observation of Ms. Rothbaum's

Replacement Phone. Plaintiff asserts that Thompson performed the same testing as Senior

Engineer Matthew Chung. Daubert Opp., pp. 7-8. He did not. While both Thompson and

Chung left the Replacement Phone in standby mode for certain periods of time and checked it

intermittently (Daubert Opp., pp. 7-8), Senior Engineer Chung also performed several diagnostic

tests -- including power consumption measurement, software version checks, voltage

measurements, and power checks. *See generally* Senior Engineer's Report on the Testing of

Amy Rothbaum's Smartphone, ("Chung Report") (Dkt. No. 78). In addition, Chung performed

normal use tests -- *i.e.*, making and receiving calls and texts, running applications, browsing the

internet, taking pictures and recording and playing videos. *Id.* As the Plaintiff apparently

concedes (Daubert Opp., p. 4), Thompson's investigation consisted solely of observing and

visually inspecting the Replacement Phone. *See* STA's Daubert Memorandum, p. 6; *see also*

Thompson Dep., Barnes Aff., Ex. J, at 77:18-87:13. Moreover, Chung did not observe a

shutdown event (Chung Report at ¶11) and, therefore, had no ability to attempt to determine the

cause of one.

Thompson reported that he observed a shutdown event.  But he chose not to do any testing to determine what caused it.  *See* Thompson Dep, Barnes Aff., Ex. J, at 91:4-5.

Plaintiff further contends that Thompson was not required to apply any specialized methodology or testing.  *See* Daubert Opp., p. 7 n. 2.  In support of this contention, the Plaintiff relies on a grab-bag of cases from other jurisdictions.  They stand for the commonplace proposition that expert testimony may be admissible where an expert's opinions are grounded in observations tied to his particular expertise.  *Id*.  STA does not dispute this proposition in general.  Thompson's opinions in this case, however, are clearly deficient in comparison with those of the experts in the cases cited.  For example, in *Hickerson*, a fire causation expert based his opinion on observations such as "burn patterns," "relative degrees of damage," "type of damage," and the locations of potential power sources.  *Hickerson v. Dist. Pride Mobility Prods. Corp.*, 470 F.3d 1252, 1253-1255, 1257 (8th Cir. 2006) (admitting expert testimony based on the expert's "identification of a point of origin and the elimination of other possible causes").  Similarly, the parties' respective fire causation experts in *Shuck* explained in detail exactly how their opinions were based on their respective post-fire observations of a combine, an engine, and the surrounding location.  *Shuck v. CNH Am., LLC,* 498 F.3d 868, 872, 874 (8th Cir. 2007).  In *Altieri,* likewise, a structural engineering expert opined that a roof collapse was caused by soil/hydrostatic pressure based on his observations that the rear foundation wall (1) "was attached to an adjacent property's retaining wall, and [] both walls collapsed"; (2) "showed evidence of severe movement/bulging prior to the collapse, including large cracks filled with spray foam;" and (3) was parallel to the roof framing and not a bearing wall for the roof.  *Altieri v. State Farm Fire and Cas. Co.,* Civil Action No. 09-2342, 2011 U.S. Dist. LEXIS 53231, at *7-8 (E.D. Pa. May 17, 2011) (internal quotations omitted).

In each of these three cases, the expert's experience had a clear scientific connection to the observations made by the experts and their respective conclusions. *See also Correa v. Cruisers*, 298 F.3d 13, 26 (1st Cir. 2002) (finding "visual inspection, including observation of excessive smoke and 'fouled up' spark plugs . . . one acceptable way for a mechanic or engineer to detect an engine problem"). Here, in contrast, Thompson merely observed that Ms. Rothbaum's Replacement Phone first had power on, and later had power off. This is a factual observation. There is no expert explanation stated in Thompson's Report. Thompson did not explain in any way how the application of specialized knowledge and experience could have enabled him, based on that factual observation, to reach his opinion that Ms. Rothbaum's Replacement Phone suffered from the same defect alleged in the Complaint.

As explained in the Expert Report of Joseph McAlexander, submitted by STA (Dkt. No. 93), the problem reported by the Plaintiff may be attributable to any number of potential causes; and the true cause has not yet been determined. *See* STA's Daubert Memorandum, p. 8 and n. 8 (*citing* McAlexander Report, ¶¶ 3, 25, 47-48, 79). Complex electronic devices shut down for many different reasons. McAlexander Report, ¶¶22-29. "The cause can be hardware, operation of the system …, a particular running application or combination of applications running in parallel, computer viruses, or various other sources of error." *Id.* ¶22. This is common knowledge, and the Plaintiff does not deny it. *Cf.* Daubert Opposition, pp. 8-10. Nonetheless, the Plaintiff argues that Thompson was not required to rule out alternative causes of Ms. Rothbaum's shutdown problems. Plaintiff does not explain how the Report can have value without some such analysis.[4] Notably, one of the very cases cited by Plaintiff (Daubert Opp. at

---

[4] Plaintiff contends that "*Daubert* does not require that an expert rule out every conceivable alternative explanation of an event." *See* Daubert Opposition, p. 9, citing *Fed. Ins. Co. v. Pentair Residential Filtration, LLC,* Civil Action No. 12-10853-RGS, 2013 U.S. Dist. LEXIS 165646 (D. Mass. Nov. 21, 2013). Plaintiff misreads the *Pentair* case. The expert in that case conducted an analysis. Based on his analysis, the expert "explained that in his opinion, the

- 7 -

p. 7, n. 2) demonstrates that an expert report is useful when it does address other potential causes. *See, e.g., Hickerson*, 470 F.3d at 1257-58 (8th Cir. 2006) (admitting fire causation expert's testimony regarding fire's origin, where expert had examined and ruled out other potential causes); *see also Alves*, 448 F. Supp. 2d at 299-300 (Wolf, J.); *McGovern v. Brigham & Women's Hosp.*, 584 F. Supp. 2d 418, 426 (D. Mass. 2008) (Young, J.).

All of the cases cited by the Plaintiff (*see* Daubert Opp., pp. 8-10 and n. 3) stand for the well-established proposition that the proponent of an expert must show that the expert's opinions have "been arrived at in a scientifically sound and methodologically reliable fashion." *Pentair Residential Filtration, LLC*, 2013 U.S. Dist. LEXIS 165646, at *14 (quoting *Ruiz-Troche*, 161 F.3d at 85); *see also Jahn v. Equine Servs., PSC*, 233 F.3d 382, 392-93 (6th Cir. 2000) (finding challenged experts' opinions "were based on undisputed objective medical facts" and that the experts "applied a scientifically-based methodology to the limited facts with which they were presented."). Plaintiff has utterly failed to make the required demonstration here. Plaintiff's expert has ignored the evidence and failed to consider alternative causes, and has not applied any recognized methodology at all. His expert report should be precluded.

## B.   Thompson Did Not Employ Any Recognized Methodology In Reviewing STA's Documents.

The second section of Thompson's Report did nothing more than read and quote (selectively) from some of the documents produced by STA. Thompson was asked about this at his deposition: "Is there a principle or methodology that you're applying, and would you explain

---

cap failed because of a design defect, specifically that the inside corner radius where the crack originated was only 7% of the wall thickness whereas, in good engineering design an inside radius on plastic components should be 25% to 75% of the wall thickness...." *Id.* at *7 (internal quotations omitted). The court first found that the *Pentair* expert had ruled in, with substantial detail, a specific defect and a specific cause. The court then held that the expert was not required to "rule out every conceivable alternative explanation of an event." *Id.* at *13-14 (emphasis added). In the case at bar the Plaintiff's expert has not reached the starting point of this debate. He has not conducted any analysis to "rule in" a specific defect with a specific cause.

it to me, please?"  *See* Thompson Dep., Barnes Aff., Ex. J, at 70:24-25.  Thompson responded

that he had "nothing to add" beyond quoting the documents.  *Id.* at 74:4-9.  *See also* STA's

Daubert Memorandum, pp. 3, 9.  Thompson offered nothing more, when given the opportunity,

because he had no credible analysis.  Plaintiff's Opposition has failed to demonstrate that

Thompson applied any recognized methodology.[5]  The Opposition merely states that (1)

Thompson "read and analyzed" the STA documents; and that (2) Thompson has 31 years of

experience with consumer electronics engineering.  *See* Daubert Opp., pp. 4, 11, 12.  Plaintiff

does not explain *how* Thompson's experience aided his review of those documents or led him to

formulate his opinions.  *See* Daubert Opp., p. 11.

     According to the Plaintiff's Opposition, STA documents demonstrate that, between

September 2010 and June 2011, ███████████████████████████████████████

█████████████████████████████████.  Daubert Opp., pp. 6, 11.  Only a small minority of

phones were ever returned, however.  *See* Declaration of Gina M. Tufaro ("Tufaro Decl.") (Dkt.

No. 113) Decl., Ex. S, Transcript Ex. 6 (STA_ROTH 0000001) (previously submitted by STA as

Ex. F to the Second Rowden Aff.); *see also* Tufaro Decl., Ex. G (STA_ROTH 0000170)

(previously submitted by STA as Ex D to the Barnes Aff.); Ex. P (STA_ROTH 0000471)

(previously submitted by STA as Ex. H to the Barnes Aff.).  The documents cited by the Plaintiff

point to ██████ that small minority.[6]  Thompson does not explain how he leaped to his

---

[5] While the Plaintiff states that Thompson "researched and consulted general data sheets on tantalum and ceramic capacitors" (Daubert Opp., p. 4), Thompson did not offer any explanation in either his Report or his deposition testimony as to how (if at all) those data sheets aided him in reaching his opinions.

[6] And the Plaintiff's assertion of ██████ is itself greatly overstated.  When Captivate devices were returned for a power-related reason, many of them did not have the problem alleged by the Plaintiff, and many did not have any defect at all.   Power-related problems included several different issues, not just the issue alleged by the Plaintiff. *See* Barnes Aff., Ex. H (STA_ROTH 0000474), cited in McAlexander Report, ¶70. ████████████████████████████
███████████████████████   *Id.*  For the majority of these returned devices, moreover, it turned out that the device did not have a defect at all.  *Id.*   STA's motion papers included a page stating this result.  *See* Barnes Aff., Ex. I

conclusion that "100%" of *all* the Captivate devices were defective.  Thus the Plaintiff has not

met her burden of demonstrating that Thompson's opinions have "been arrived at in a

scientifically sound and methodologically reliable fashion."  *Pentair Residential Filtration, LLC*,

2013 U.S. Dist. LEXIS 165646, at *14 (citing *Ruiz-Troche*, 161 F.3d at 85).

### C.   Thompson's "100%" Opinion Is Refuted By The Evidence

Thompson's Report cited eight documents produced by STA.  STA's Daubert

Memorandum addressed all eight of them.  The very same documents cited and quoted by

Thompson demonstrate that only a ███████████████████████████████

██████████████████.  *See* STA's Daubert Memorandum, pp. 3, 8-19; *see also* Tufaro Decl., Ex. D

(STA_ROTH 0000004) (previously submitted by STA as Ex. B to the Barnes Aff.); Ex. G

(STA_ROTH 0000174) (previously submitted by STA as Ex. D to the Barnes Aff.); Ex. F

(STA_ROTH 0000420) (previously submitted by STA as Ex. G to the Barnes Aff.); Ex. P

(STA_ROTH 0000471) (previously submitted by STA as Ex. H. to the Barnes Aff.).  Plaintiff

does not address these documents or STA's corresponding arguments in her Opposition; nor

does Plaintiff cite any additional documents in support of Thompson's contention.

Thompson's "100%" assertion is also contradicted by the factual propositions contained

in the Plaintiff's own submission pursuant to Local Rule 56.1.  Plaintiff herself has

acknowledged that less than ██████ of the Captivate devices were returned by customers, for any

reason, during a period of six months.  *See* Plaintiff's Response to Defendant's Rule 56.1

Statement of Undisputed Material Facts and Plaintiff's Separate Statement of Disputed Material

Facts, at 14. Plaintiff acknowledges that ████████ units were sold during a period of twelve

months.  *See id.* at 9, Statement No. 1. ██████████████████████████████

(STA_ROTH 0000554);  *see also*  STA's Daubert Memorandum, p. 16.  Plaintiff submits the same document (*see*
Paradis Decl., Ex. F (at Ex. 4 to the deposition transcript, page STA_ROTH 0000554)), and the Plaintiff does not
make any effort to refute this finding.  *Cf.* Daubert Opposition, p. 11.

████. *See* Tufaro Decl., Ex. S, Transcript Ex. 6 (STA_ROTH 0000001) (previously submitted by STA as Ex. F to the Second Rowden Aff.).  Assuming the rate remained approximately the same, ████████ units were returned in the course of the year, while the other ████ units remained in use.  There is no genuine basis for Thompson to assert that the other ████████ are defective.  *General Elec.*, 522 U.S. at 143-145.

On the contrary, Samsung took steps to ████████████████████ ████████████.  *See* Tufaro Decl., Ex. D (STA_ROTH 0000004) (previously submitted by STA as Ex. B to the Barnes Aff.); *see also* Barnes Aff. Ex. C (STA_ROTH 0000133).  In support of his "100%" assertion, Thompson asserts that ████████ did not succeed.  Thompson Report, Barnes Aff., Ex A, at 2-7.  This assertion is also fictional.  The data submitted by STA addressed this question.  ████████████████████ ████████████████████████.  *See* STA's MSJ Memorandum, p. 14 n. 8 (*citing* Second Rowden Aff., Ex. F (STA_ROTH 0000001) (also submitted by Plaintiff as Tufaro Decl., Ex. S, Transcript Ex. 6)).  ████████████████████████

████.  *Id.*[7]  STA's internal documents state that the ████████████████  *See* Barnes Aff., Ex. C (STA_ROTH 0000133).  Plaintiff cites several documents that date from ████ ████████████.  *See* MSJ Opp., pp. 3, 9-10 (*citing* Tufaro Decl., Ex. H (STA_ROTH 0000002), Ex. I (STA_ROTH 0000304) (previously submitted by STA as Ex. F to the Barnes Aff.), Ex. J (STA_ROTH 0000186) (previously submitted by STA as Ex. E to the Barnes Aff.).  STA has already addressed these documents.  *See* STA's Daubert Memorandum, pp. 11, 16-17.  According to these documents, there were ████████████████████

---

[7] Even this percentage is overstated.  When Captivate devices were returned for a power-related reason, many of them did not have the problem alleged by the Plaintiff, and many did not have any defect at all.  *See* p. 9 n. 6, *supra*.

██████████████████████████████   *See*  Tufaro Decl., Ex. I

(STA_ROTH 0000304) (previously submitted as Ex. F to the Barnes Aff.).   ██████████

████████████████████████████████████

     The final page of the Plaintiff's Daubert Opposition concludes her argument by citing *Zeolla*, 2013 U.S. Dist. LEXIS 10462, at \*26-27.  That same decision states the applicable principle very clearly:  "experts cannot simply ignore contradictory evidence; they are not allowed to pick and choose the facts they find helpful and to pretend that the others do not exist."  *Id.* at \*25; *see also Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993); *Irvine v. Murad Skin Research Labs, Inc.*, 194 F.3d 313, 320-21 (1st Cir. 1999); *McGovern*, 584 F. Supp. 2d 418, 426 (Young, J.).  Because Thompson's opinions are not supported by the documents upon which he relies, his testimony must be precluded.  *General Elec.*, 522 U.S. at 143-145.

## III.   <u>CONCLUSION</u>

     Plaintiff's Opposition is strong on rhetoric, but has no substance.  Thompson has not applied any scientific technical or specialized knowledge to the facts of this case, and instead Thompson has ignored the central facts.  His testimony should be precluded.  Thompson's expert report does not belong in federal court.

March 31, 2014                              Respectfully submitted,


                                           SAMSUNG TELECOMMUNICATIONS
                                           AMERICA, LLC,

                                           By its attorneys,

                                           /s/ *Robert M. Buchanan, Jr.*
                                           Robert M. Buchanan, Jr. (BBO# 545910)
                                           (rbuchanan@choate.com)
                                           Margaret E. Ives (BBO# 668906)
                                           (mives@choate.com)
                                           Jared M. Barnes (BBO# 679342)
                                           (jbarnes@choate.com)
                                           Choate, Hall & Stewart LLP
                                           Two International Place
                                           Boston, Massachusetts  02110
                                           Tel: (617) 248-5000

## CERTIFICATE OF SERVICE

       I hereby certify that this document, filed through the ECF system, will be sent electronically in redacted form to the registered participants as identified on the Notice of Electronic Filing (NEF) and that unredacted copies will be sent to all counsel via email and overnight mail on March 31, 2014.  STA has filed a motion for leave to submit under seal the unredacted full-text version of this document, and that motion remains pending.

                                          */s/ Robert M. Buchanan, Jr.*
                                          Robert M. Buchanan, Jr. (BBO# 545910)

6096467